## MENZO LAMBERT AND HANNIBAL HILL
### v.
## JOSEPH ALCORN.

*Real Property—Farm Drainage—Superior and Inferior Heritage—
Increase of Natural Flow of Water from Former to Latter—System of
Tile Drainage.*

Upon the case presented, this court holds that the defendant had a
right to put in a system of tile drainage upon a portion of his own land
and of the land of a neighbor, whereby the surface water collected
on his lands would be discharged into a ditch in the public highway, and
would flow from thence to and across the lands of appellants to a creek,
it appearing, from the situation of the lands involved, that the water,
when drained from appellee's land, must, in the natural course of drain-
age, flow in the direction and along the course in which the tile was pro-
posed to be laid.

### [Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of La Salle County; the
Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. BROWNE & AYERS, and J. B. RICE, for appellants.

The record in this cause wholly fails to show the exist-
ence of a natural watercourse, either upon the lands of
appellee or upon those of appellants, and the findings of the
court below in that respect, and consequently as to all of
said final decree and order, contrary to prayer of complain-
ants' bill, were and are erroneous.

Under this head we will, if the court please, make three
subdivisions:

There must have existed on both the lands of complain-
ants (appellants in this court) and those of defendant (appel-
lee in this court), at time of commencement of this action,
a connected natural watercourse, by which said proposed
drainage was to be effected from lands of appellee to and
through those of appellants, else the decree of court below

must be erroneous.   Peck v. Herrington, 109 Ill. 611; Miller v. Laubach, 47 Pa. St. 154; Hicks v. Silliman, 93 Ill. 255; Wagner v. Chaney, 19 Ill. App. 546; Commissioners of Highways of Pre-emption v. Whitsitt, 15 Ill. App. 318; Butler v. Peck, 16 Ohio St. 334; Dickinson v. City of Worcester, 7 Allen (Mass.), 19; Washburn on Easements, 353, 354; Martin v. Riddle, 26 Pa. St. 415.

Must drain into a natural watercourse or channel on dominant heritage.   Peck v. Herrington, 109 Ill. 611; Wagner v. Chaney, 19 Ill. App. 546; Commissioners of Highways of Pre-emption v. Whitsitt, 15 Ill. App. 318.

Can not collect water from the dominant heritage by ditches and other artificial means, and without discharging them into a natural watercourse on dominant heritage, but instead into an artificial channel, discharge them through the same on lower lands.   Wagner v. Chaney, 19 Ill. App. 546; Hicks v. Silliman, 93 Ill. 255; Miller v. Laubach, 47 Pa. St. 154.

There did not exist across either the lands of appellee or those of the appellants, or of all collectively, a natural watercourse at time of commencement of this suit, or prior thereto.

Definition of watercourse.   Angell on Watercourses, 2–5; Earle v. De Harte, 1 Beasley Ch. (N. J.) 283, 284.

Surface water must flow in a regular well defined natural channel in order to be regarded as a watercourse in this State.   Peck v. Herrington, 109 Ill., p. 618 of that decision; Gormly v. Sanford, 52 Ill. 158; Gillham v. Madison County R. R. Co., 49 Ill. 484; Wagner v. Chaney, 19 Ill. App. 546; Commissioners of Highways of Pre-emption v. Whitsitt, 15 Ill. App. 318.

A watercourse can not mean a place where in freshets and floods water descends from higher to lower levels and inundates the country.   Luther v. Winnisimmett Co., 9 Cush. 171; Ashley v. Wolcott, 11 Cush. 192; Flagg v. Worcester, 13 Gray, 601; Broadbent v. Ramsbotham, 11 Exch. 602; Bangor v. Lansil, 51 Maine, 521; Washburn on Easements (1st Ed.), 208, 209, 210.

Upon the supposition that there has existed, as appellee sets up, for years past such natural watercourse on appellee's lands (a supposition entirely without foundation), the proposed system of drainage will utterly ignore, or rather destroy, said alleged watercourse, and the drainage proposed will be wholly and entirely through artificial channels, and wholly and entirely an artificial system; a result absolutely repugnant to any and all law of surface drainage. Peck v. Herrington, 109 Ill. 611; Commissioners of Highways of Pre-emption v. Whitsitt, 15 Ill. App. 318; Wagner v. Chaney, 19 Ill. App. 546; Hicks v. Silliman, 93 Ill. 255; Miller v. Laubach, 11 Wright (Pa.), 154; Dickinson v. City of Worcester, 7 Allen (Mass.), 19; Livingston v. McDonald, 21 Iowa, 160; Washburn on Easements, 224, Sec. 16; Martin v. Riddle, 26 Pa. St. 415; Kaufmann v. Griesmer, 26 Pa. St. 407.

Increase of the burden on lower heritage, by enlargement of the open ditch across appellee's land from time to time during past twenty years, must, of necessity, prevent any prescriptive right of flow over land of appellants from being acquired by appellee. Tiedeman on Real Property, 605; Wood on Nuisances, 457, Sec. 415; Washburn on Easements, 287, Sec. 48.

Has not gained any perscriptive right to such flow by even twenty years' enjoyment. Rawstrom v. Taylor, 11 Exch. 369; Wood on Nuisances, 415, 416.

Appellee does not propose to use even this artificial channel, but will construct an entirely new and independent artificial channel to convey the waters from his lands. Defendant's Answer, Abstract 15.

Owner of the higher lands has no right to open or remove natural barriers and let onto lower lands water which would not otherwise naturally flow in that direction. That would be to subject the servient heritage to an unreasonable burden which the law will not permit. Anderson v. Henderson, 124 Ill. 164; Dayton v. Drainage Commissioners, 128 Ill. 271; Kaufmann v. Griesmer, 26 Pa. St. 407.

Record shows that proposed drainage will result in

absolute destruction of complainants' lands for farm or agricultural purposes.

Upper proprietor can not conduct surface water from his land by new channels in unusual quantities onto particular parts of land below him to injury of lower proprietor. Washburn on Easements, 353; Peck v. Herrington, 109 Ill., p. 620 of that decision; Hicks v. Silliman, 93 Ill. 255; Herrington v. Peck, 11 Ill. App. 62; Livingston v. McDonald, 21 Iowa, 160; Martin v. Riddle, 26 Pa. St. 416; Waffles v. Railroad Co., 58 Barb. 413; Miller v. Laubach, 47 Pa. St. 154; Butler v. Peck, 16 Ohio St. 416; Templeton v. Vasloe, 72 Ind. 134; Dickinson v. City of Worcester, 7 Allen, 19; Kaufmann v. Griesmer, 26 Pa. St. 407; Cooley on Torts, 577; Washburn on Easements, Sec. 209; Wood on Nuisances, 404; Angell on Watercourses, Sec. 108.

Can not drain into public highway without consent of commissioners of highways, without being liable to persons affected thereby. Starr & C. Ill. Stats., 962, Sec. 177; Kauffmann v. Griesmer, 26 Pa. St. 415.

Court below erred in decreeing that appellants (complainants below) should pay $338.55, or any other sum, for damages on partial dissolution of injunction. Damages must be based on proof. Rees v. Peltzer, 1 Ill. App. 315.

Two parts enjoined, one of which is freed from injunction, the other still remaining enjoined, must be distinct and severable. Walker v. Pritchard, 25 N. E. Rep., p. 575 in such decision.

Messrs. Fowler Bros., for appellee.

This principle is clearly settled in the case of Young v. The Commissioners of Highways, etc., 134 Ill. 569. On page 581, the court say: "The commissioners of highways where they undertake to drain a public highway, possess the same rights and are to be governed by the same rules as adjoining land owners who may undertake to drain their own lands, except where they may be proceeding under the eminent domain laws of the State." See also Commissioners of Highways of Pre-emption v. Whitsitt, 15 Ill. App. 323.

The rule is the same when applied to highways as to farms.   Graham v. Keene, 34 Ill. App. 87.

In the case of Young v. Commissioners of Highways, 134 Ill., on page 581, the court, in commenting on the Peck-Herrington case as to the right of the commissioners of highways, where they undertake to drain a public highway after deciding that they possess the same rights and are to be governed by the same rules as adjoining land owners who may undertake to drain their own lands, use the following language : " Under the rule established in this case, it seems plain that where water, accumulating in a particular part of a highway, will naturally run off in a certain channel or waterway, all that portion of the highway which lies in such a position as to naturally drain in that direction, may be drained in such channel, although the flow of water may be increased."

The rule of law is well settled in this State, that the owner of a dominant heritage may, by ditches or drains, drain his own land into the natural and usual channel or watercourse, even if the quantity of water thrown upon the adjacent heritage be thereby increased.   The same rule in this State applies to surface water as to running streams." Graham v. Keene, 34 Ill. App. 90; Peck v. Herrington, 109 Ill. 611; Gilman v. Madison Ry. Co., 49 Ill. 484; Gormly v. Sanford, 52 Ill. 158; Wagner v. Chaney, 19 Ill. App. 546; Com. of Highways of Pre-emption v. Whitsitt, 15 Ill. App. 318; Totel v. Bonnefoy, 123 Ill. 653; Anderson v. Henderson, 124 Ill. 164; Dayton v. Drainage Commissioners, 128 Ill. 276; Drainage District v. Drainage District, 130 Ill. 264; Young v. Coms. of Highways, 134 Ill. 569.

MR. JUSTICE CARTWRIGHT.   The appellants, Menzo Lambert and Hannibal Hill, filed their bill in chancery against Joseph Alcorn, appellee, seeking a perpetual injunction to restrain Alcorn from putting in a system of tile drainage on his lands and the lands of Mary Wilson, whereby the surface waters collected on his lands would be discharged into a ditch in the public highway, and flow from thence to

and across the lands of appellants toward Indian Creek. The court upon hearing made the injunction perpetual as to fifty acres of Alcorn's land, and dissolved it as to the remaining one hundred and ten acres. The evidence shows that the lands of Alcorn, as to which the injunction was dissolved, are quite level. They are mainly low, wet lands interspersed with small marshes or ponds, which furnish receptacles for surface waters caused by rains and melting of snow. The surface waters were accustomed to stand in these marshes and ponds and settle into the soil or pass off by evaporation, except in case of heavy rains or freshets, when the lands would be overflowed and the water would run off toward the west, except such as would remain in the marshes and shallow ponds. Such slope as there is, tends toward the west and is very slight except in the extreme westerly portion, near the place of discharge, where there is a sufficient slope to carry off all water from that portion of the lands toward the west.

The contemplated system of drainage upon these lands was to put in a main tile drain leading toward the west with lateral branches running into it. West of Alcorn's land lies a tract owned by Mary Wilson, across which it is designed to lay the tile in a westerly direction, discharging the water therefrom into a ditch on a public highway running east and west, north of the lands of said Mary Wilson and Alcorn. The water when discharged into this ditch would run westerly along the same to an intersection with another highway running northeasterly and southwesterly, where it would pass under a culvert and flow upon lands of Lambert, and from thence across lands of Mary Wilson to and across lands of Hill to Indian Creek. The tile across the lands of Mary Wilson between Alcorn's land and the place of discharge at the public highway were to be laid in a ditch dug in a natural depression across the lands where the waters had been accustomed to flow in running off from Alcorn's land as before stated.

From the place where the water would cross the highway, there is a practically continuous, natural fall to and

across appellants' lands toward Indian Creek, and across their lands there is a natural depression, in which the surface water in time of heavy rains or freshets has been accustomed to run to the natural watercourse at the creek. At times there have been considerable currents of water running off through this natural depression. Appellants contend that appellee has no right to put in operation this system of drainage, by collecting the surface water on his land into an artificial ditch or channel, and conducting it to the land of the adjacent owner in such artificial channel. They claim that he must conduct the water so as to discharge it upon his own land into a well defined natural watercourse upon his own premises, and so that it will flow from thence in a natural watercourse over the land of such adjacent proprietor. The claim is that he can not impose any burden upon their lands by the construction of ditches or artificial structures, unless such burden is caused in assisting the flow of water into a natural channel on his own premises. Appellee claims the right to drain his lands both by virtue of the law applicable to dominant and servient estates and by reason of the statute concerning farm drainage, in force July 1, 1885. Section 4 of this act is as follows :

" Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same into any natural watercourse or into any natural depression, whereby the water will be carried into some natural watercourse, or into some drain on the public highway with the consent of the commissioners thereto; and when such drainage is wholly upon the owner's land, he shall not be liable in damages therefor to any person or persons or corporations."

From the situation of appellee's lands the water, when drained off, must, in the natural course of drainage, go in the direction and along the course in which the tile was proposed to be laid. The commissioners of highways are not complaining of the proposed discharge of the water into the drain on the public highway; and the place of discharge is at the intersection of the highway with a natural

depression where water had previously naturally flowed into the highway, the only effect of the tile drain being to increase the quantity which would otherwise flow into such highway drain.

The lands of appellee would be more perfectly drained in the general course of natural drainage, and the increased quantity of water flowing in the highway drain would be discharged into the natural depression on the lands of appellant Lambert. The tile was to be laid across the lands of Mary Wilson to the highway by agreement with her. The conditions of the case appear to meet the provisions of the statute.

Aside from the statute, the owner of a higher tract of land has a right by ditches and drains to drain his land, so that the surface water falling or coming naturally upon it may pass off through the drains which nature has provided over the lower land, although the quantity of water thrown upon the lower land may be increased. Young v. Com'rs of Highways, 134 Ill. 569; Dayton v. Drainage Com'rs, 128 Ill. 271; Anderson v. Henderson, 124 Ill. 164; Totel v. Bonnefoy, 123 Ill. 683; Peck v. Herrington, 109 Ill. 611.

We think that appellee had the right to drain his lands, concerning which the injunction was dissolved, in the manner contemplated by him.

It is also urged that the court erred in assessing damages on the partial dissolution of the injunction. Most of the expenses incurred by appellee were on account of proof as to the lands on which the injunction was dissolved, and the damages allowed were justified.

Appellee has assigned as cross-error that the court erred in making the injunction perpetual as to the fifty acres. He disclaimed in his answer any intention to drain this fifty acres in the direction of complainant's lands, but when examined as a witness he prevaricated as to his intention so that it was not discoverable from his testimony what it in fact was. The injunction was properly made perpetual as to the fifty acres. The decree will be affirmed.

*Decree affirmed.*