Argued October 17, modified November 19, 1918.

## STEPHENS *v.* CITY OF EUGENE.*

(175 Pac. 855.)

**Waters and Watercourses—Rights of Riparian Owner—Accustomed Flow.**

1. Riparian owner of land, abutting on both banks of a slough, is entitled to have water flow as it is naturally accustomed to flow.

[As to nature of riparian rights and lands to which they attach, see note in Ann. Cas. 1913E, 709.]

**Eminent Domain—Remedy of Riparian Owner—Injunction—Flowage.**

2. Where city constructed power plant, and for operation thereof conducted water from river and discharged it in large quantities into slough, materially increasing the accustomed flow, to the damage of lower riparian owner of land on both banks of slough, such discharge constituted a continual trespass, which riparian owner could have enjoined.

*Authorities discussing the question of liability of municipality for tort in connection with its waterworks system are collated in notes in 61 L. R. A. 58; 25 L. R. A. (N. S.) 239; 52 L. R. A. (N. S.) 465. On right of upper proprietor in increase quantity of flood water, see note in 41 L. R. A. 746.        REPORTER.

**Municipal Corporations—Trespass—Electric and Waterworks.**

3.  In the construction and operation of electric and waterworks for profit, the city occupies the same position as a private corporation, organized to buy or sell and get gain, and in the same manner as an individual it is liable, both at law and in equity, for its trespass upon and violation of individual rights.

**Eminent Domain—Remedy of Owner—Damages.**

4.  Where city diverted water from river for operation of water plant, and discharged it into a slough in large quantities, materially increasing accustomed flow, so that lower riparian owner of land on both banks of slough could not ford the slough, as he had prior thereto been doing, and was compelled to go two miles out of his way to reach his plow land, he was entitled to damages.

**Eminent Domain — Discharge of Water into Slough — Injunction — Relief.**

5.  Equity, in action to enjoin city from discharging water used in operation of waterworks into slough, to the damage of lower riparian owner, cannot condemn land for such purposes and fix amount to be paid owner.

From Lane: James W. Hamilton, Judge.

Department 1.

The plaintiff is the owner of land through which runs a slough originally debouching from the McKenzie River but now closed from that stream, except in floods, by gravel washed in by the water. Before the defendant's advent in the vicinity, at the usual stage on the plaintiff's land the slough carried a flow of about sixteen inches in depth derived from springs and surface water brooks. The plaintiff's buildings are on the north side, and his fields on the south side of the waterway in question. Ordinarily he obtained access to his farm land by fording the slough. He alleges, however, that the defendant constructed on its land above his premises a power plant, to operate which it took out water from the river some miles above, conducted it to the plant and thence discharged it in large quantities into the slough, and has continued and will persist in so doing with the result that it keeps the water continually so high that his ford

has been destroyed; that he has been damaged on account thereof in the sum of $400, caused by the loss of the crossing, compelling him to go about two miles out of his way and through a neighbor's close, to reach his plow land, instead of going directly across the stream, on his own premises. He prays for a decree enjoining the conduct of the defendant thus described and for damages.

The city admits the plaintiff's ownership of the land in question and after denying the other allegations of the complaint except that of its own corporate existence, avers its legislative charter authorizing it to purchase, acquire, maintain, own, manage and operate waterworks, as well as electric and gas lighting systems and to that end has the right to exercise the power of eminent domain for the condemnation of lands. It states its municipal legislation to that end and in substance says it constructed the power plant on its own premises, above the property of the plaintiff, and has engaged in the business of supplying the inhabitants of Eugene with water at rates fixed by the city, as well as electricity for light and power purposes to those who purchase the same. It then makes this averment:

"That said power plant is situated on lands owned by the defendant and that along the southerly line of defendant's premises upon which the power plant is situated, there is a stream flowing westerly which heads some distance easterly from the power plant of the defendant, and flows westerly along the south boundary of the defendant's said premises, and through the premises of the plaintiff and empties into the McKenzie River; that said stream has well-defined banks and channel and is and at all of the times mentioned in the complaint was a well-defined watercourse. The defendant further alleges that in the construction and operation of its power plant as afore-

said, it empties by means of a tail race, the water used in furnishing the power of said plant into the said watercourse and permits it to flow through said watercourse back into the McKenzie River, and the defendant alleges that at no time in the operation of said power plant has it emptied a sufficient quantity of water into said watercourse to raise the water of said stream out of its banks on the premises of the plaintiff, and that at all times the water in said stream has been confined to the bank and channel of said stream as the same passes through the premises of the plaintiff; and that the construction of said power plant and water system was commenced prior to the 1st day of January, 1909.''

The reply traverses the new matter in the answer in important particulars and after a trial before the court, findings of fact favorable to the plaintiff in a large measure were filed and a decree was entered to the effect that the defendant be enjoined from diverting the water of the McKenzie River and causing it to flow through plaintiff's real property, but suspended the operation of the decree, provided the defendant should within sixty days from the entry thereof commence proper proceedings to condemn the property of the plaintiff and prosecute the same with diligence. A motion was made on behalf of the plaintiff that the court modify its findings and decree so as to allow the plaintiff the damages which he had suffered on account of being deprived of access to his premises by way of the ford, but this was denied. The plaintiff alone appeals, and complains, in substance, that the court erred in failing to make any allowance as to the amount of damages which he suffered by the destruction of the ford, and further, in substance, that the court was wrong in failing substantially to render a decree condemning the property to the use of the city upon its paying such sum as should be

adjudged reasonable as upon the exercise of eminent
domain.                                    MODIFIED.

For appellant there was a brief over the names of
*Mr. A. C. Woodcock* and *Messrs. Parsons & Stevens,*
with an oral agrument by *Mr. Woodcock.*

For respondent there was a brief and an oral argu-
ment by *Mr. O. H. Foster.*

BURNETT, J.—1-3. It clearly appears that the
plaintiff is a riparian owner of land abutting upon
the slough in question, on both banks thereof. As
such, he has the right to have the water flow through
his premises as it was naturally accustomed to flow.
Without compensation being first assessed and ten-
dered, no one has any right to increase materially the
constant flow of the water to the damage of the lower
riparian owner. Such action constitutes a continual
trespass and properly may be enjoined at the suit of
the injured party. It is this principle which is the
ground work of cases like *Hallock* v. *Suitor,* 37 Or. 9
(60 Pac. 384), and *Trullinger* v. *Howe,* 53 Or. 219 (97
Pac. 548, 99 Pac. 800, 22 L. R. A. (N. S.) 545), here
the court enjoined the use of splash dams which at
times let loose upon the stream large and unusual
quantities of water which injured lower bank pro-
prietors. That a continual trespass may be enjoined
in equity has been decided several times by this court,
notably in *Chapman* v. *Dean,* 58 Or. 479 (115 Pac.
156), *Micelli* v. *Andrus,* 61 Or. 78 (120 Pac. 737), and
*Stotts* v. *Dichdel,* 70 Or. 86 (139 Pac. 932). In the
construction and operation of electric and waterworks
for profit the city occupies the same situation as a
private corporation organized to buy or sell and get
gain, and in the same manner as an individual it is lia-

ble both at law and in equity for its trespasses upon and violation of individual rights.

The defendant contends that it is liable only for consequential damages based upon its negligent and careless operation of its works and in effect, at least, not for the original invasion of the plaintiff's premises. It cites in support of this doctrine, *Fleming* v. *Lockwood,* 36 Mont. 384 (92 Pac. 962, 122 Am. St. Rep. 375, 13 Ann. Cas. 263, 14 L. R. A. (N. S.) 628), *Billings Realty Co.* v. *Big Ditch Co.,* 43 Mont. 251 (115 Pac. 828), *Howell* v. *Big Horn Basin Colonization Co.,* 14 Wyo. 14 (81 Pac. 785, 1 L. R. A. (N. S.) 596), *Lisonbee* v. *Monroe Irrigation Co.,* 18 Utah, 343 (54 Pac. 1009, 72 Am. St. Rep. 784), and *Boulder* v. *Fowler,* 11 Colo. 396 (18 Pac. 337). All of these cases proceed upon the theory that the defendant had lawfully obtained the right to construct and operate the artificial waterway it was using and consequently was liable only for negligence in its management. In *Northwestern Transportation Co.* v. *Chicago,* 98 U. S. 635 (25 L. Ed. 336), it was held that the city was not liable for necessary consequential damages to adjacent property caused by any improvement of its streets, unless the work was negligently done and the damage resulted not from the mere making of the improvement but from the manner in which the work was performed. In this case, however, the defendant does not allege any right lawfully acquired to send down through plaintiff's premises an extra amount of water over what naturally flows there. It simply avows having done so and states that it did not cause the water to overflow the banks of the stream. This, however, is not by the mark, for, as already stated, the plaintiff as a riparian owner is entitled to have the water run there as it was naturally accustomed to. While he

must endure the discomfort which ordinary floods entail, he is not obliged to tolerate an artificial flood continually maintained by someone acting without right.

The defendant also urges that injunction should be withheld because it would deprive the citizens of Eugene of water for domestic purposes, and fire protection and of electricity for illumination and power purposes, and complains that the plaintiff is seeking to enjoin the operation of the municipal power plant. This is not exact in statement, for it is not alleged in the answer that the use of the slough as a wasteway is essential to the operation of the plant, and no facts are stated from which one could deduce that conclusion. The plaintiff seeks simply to enjoin the trespass by which he is denied access to his premises. The case of *Booth-Kelly Lumber Co.* v. *Eugene,* 67 Or. 381 (136 Pac. 29), is not like the instant case. There no direct trespass was committed upon the plaintiff's premises. It claimed to be affected indirectly by an alleged interference with the navigability of the McKenzie River tending to deprive the plaintiff of convenience in floating logs to a waterway leading to its sawmill. In the instant case there is a direct and continuing trespass upon the real property of the plaintiff. It is a usurpation of the rights of the plaintiff by a corporation operating in its private capacity for the purpose of gain at least in part, although incidentally of convenience to the inhabitants of the city. The conduct of the municipality affecting the plaintiff is in violation of its charter, for that instrument authorizes it to acquire property if necessary by condemnation, whereas to all intents and purposes it has appropriated the plaintiff's property without right or compensation. This is as

unjust at the behest of a city as it is by the action of an individual, and should be enjoined. It is not shown that the plaintiff acquiesced in the construction of the plant. As a matter of fact, the testimony shows that he has been continually complaining to the city and trying to get an adjustment of his grievance, but without success. Moreover, as decided in *Hallock* v. *Suitor, supra,* even if the plaintiff had remained quiet and urged no objection, his right would not be prejudiced, because he did not participate in the enterprise in any manner.

4. Incidental to the authority to enjoin a continual trespass is the other function of settling and awarding the damages already suffered by the plaintiff, so as to do complete justice between the parties. The testimony shows that when his ford across the stream was destroyed by the increased flow of water, the plaintiff was compelled to go along a county road paralleling the slough to a public bridge above his premises, where he could cross and come down the south side, through a neighbor's land, in order to gain access to his fields and pasture on the south side. He testifies that the extra labor thus involved was reasonably worth at least $75 per annum covering the six years during which he had suffered this inconvenience. He claims on this account $400, and this seems to be a reasonable estimate of the damage incurred. The Circuit Court was in error in refusing to make a finding and award on this subject.

5. The plaintiff also complains that if the court was of the opinion that the increased flow of water in the slough caused by the action of the defendant should not be interfered with, it should have condemned, in effect, to the use of the defendant the land involved and fixed a price at which the latter could purchase

the same; failing in which, the injunction should be made perpetual. The objection to this is that the pleadings are not sufficient to support a decree tantamount to condemnation. It is not stated that the city wishes to acquire any interest in the premises, nor that it had tried to agree with the plaintiff upon a purchase price and had failed. There is nothing in the pleadings from which we could frame a description of the property which the plaintiff should convey to the city upon payment of the amount to be fixed as in a condemnation proceeding. There is no way by which we can directly compel the city to carry on such litigation or to purchase the property or any interest therein. We can only forbid the trespass and assess the damages already accrued. We cannot, however, rightly go so far as to destroy or impair the granted right of eminent domain which the city derives from its charter. The decree, therefore, will be modified so as to allow the plaintiff damages in the sum of $400 and perpetually to enjoin the defendant from changing the natural flow of the water through the plaintiff's premises, subject and without prejudice, however, to the city's right to condemn the property or such interest therein as it may desire, by an appropriate action at law.                    MODIFIED.

McBRIDE, C. J., and BENSON and JOHNS, JJ., concur.