Submitted on brief January 17; affirmed February 18; rehearing denied March 10, 1936.

## METZGER *v.* CITY OF GRESHAM
(54 P. (2d) 311)

*C. G. Schneider* and *John S. Beer,* both of Portland, for appellant.

*Henry S. Westbrook,* of Portland, for respondent.

RAND, J. Plaintiff brought this action to recover for injuries resulting to his property from the discharge of surface waters thereon by the City of Gresham and, from a judgment in his favor, the city has appealed.

The city moved for a nonsuit at the close of plaintiff's case in chief and, at the end of the trial, for a directed verdict. Both motions were overruled. The correctness of these rulings is the sole question for decision upon this appeal.

■ Plaintiff's said property consists of a dwelling house and two lots in the city of Gresham. These premises are situated on ground which slopes to the west and are bounded on the east by Elliott avenue and on the south by Lawrence avenue, both of which are city streets. As Lawrence avenue was originally constructed by the city, surface water, after a heavy rainfall, would accumulate on both sides thereof for a distance of several blocks above plaintiff's premises and be conducted along each side thereof to a point below without passing from one side of the street to the other.

In order to protect these premises from the surface water flowing on the north side of Lawrence avenue, plaintiff's grantor, before the dwelling house had been built, laid a pipe across Elliott avenue and thereby conducted the surface water flowing on that side of the street into a sump or catch-basin, which he constructed near the southeast corner of said premises, and laid another pipe to carry the water from the sump to a point below said premises, after which he built said dwelling house and laid a concrete floor in his basement over said pipe.

Sometime thereafter and prior to the injuries complained of, the date not being disclosed, one of the officers of the city, who, at the time, had supervision over the public streets of the city, laid a pipe across Lawrence avenue through which the surface waters flowing on the south side thereof were conducted into said sump, and thereafter the city maintained and oper-

ated said pipe and permitted the water which had theretofore passed plaintiff's premises on the south side of the street to be conducted across the street and discharged through said pipe on to plaintiff's premises.

On February 7, 1930, following a very heavy rainfall, there was a considerable quantity of surface water flowing on the south side of Lawrence avenue above the intake of the pipe laid by the city, which, when discharged upon plaintiff's premises, in addition to the surface water flowing on the north side of said street above the intake of the pipe laid by plaintiff's grantor, was more than could be carried through the pipe leading from said sump to a point below plaintiff's premises, and this resulted in the washing away of the soil around the pipe leading from the sump under plaintiff's house, the collapse of the pipe, the filling of the basement with water and the washing away and collapse of the walls of the house as well as the washing away of large quantities of surface soil on plaintiff's premises. This constituted the injuries complained of.

Defendant's first contention is that the evidence failed to show that the city had authorized or directed the laying of the pipe which conducted the water from the south to the north side of Lawrence avenue and discharged the same on plaintiff's premises. Upon the trial it offered evidence tending to show that no ordinance had ever been passed by the city council directing the laying of the pipe which caused the damage complained of. There was evidence, however, that this pipe was laid under the direction of an officer of the city who, at the time, had supervision over the city streets and that it had been maintained and operated by the city for some time prior to the injury complained of. The question of whether the city had ever authorized or directed the laying of the pipe was fairly submitted to

the jury by the trial court and the jury found that the city was responsible for the laying and maintenance of the pipe which caused the injuries to plaintiff's property. We think that the evidence was sufficient to sustain the verdict.

Defendant's principal contention, however, is that, if the evidence was sufficient to show that the city did lay and maintain the pipe which caused the injury, it would not be liable in damage for the resultant injury because, in doing the acts complained of, it was acting in the discharge of a governmental duty and not in its corporate capacity.

■ It is a well-settled principle of law that a municipal corporation, when acting in its governmental capacity and performing a public duty imposed upon it by law, is not answerable in damages for an injury resulting therefrom. The reason for the rule in such case is that the municipality is then acting as an agent or arm of the state and, while so acting, possesses the same immunity from liability that the state would possess had the act been done by the state. The rule, last stated, is well recognized and has often been followed and approved by the decisions of this court. See *Antin v. Union High School Dist. No. 2,* 130 Or. 461 (280 P. 664, 66 A. L. R. 1271), and cases there cited. This rule, however, we think has no application to the facts proved in this case and we shall not pause to consider whether the city, in laying and maintaining the pipe which caused the damage to plaintiff's property, was acting only in a strictly governmental capacity or whether, in the doing of these acts, the city was acting ministerially for, in any event, under the facts proved, the city would be liable for the resultant damage to the property rights of the plaintiff. The rule, which we think applicable to

the facts proved, is stated in 6 McQuillin on Municipal Corporations, (2d Ed.), section 2793, as follows:

"A distinction must be drawn, however, between injuries to property rights and other injuries, since if the officers of a municipality, in the discharge of its governmental functions and police powers invade property rights, the doctrine of respondeat superior applies, and the corporation is liable for their acts."

In support of this principle, he cites *Metz v. Asheville,* 150 N. C. 748, 751 (64 S. E. 881, 22 L. R. A. (N. S.) 940). In the footnote following, he says:

"One important principle, however, is to be noted in this connection. Wherever the injury complained of is the taking or damaging of private property for public use without compensation then under the guarantee of the federal Constitution against such invasion of the private rights of property, neither the state itself nor any of its agencies or mandatories may claim exemption from liability. Perkins v. Blauth, 163 Cal. 782, 127 P. 50; Sandlin v. Wilmington, 185 N. C. 257, 116 S. E. 733."

The guarantee of the federal constitution that private property shall not be taken for public use without compensation is also guaranteed by Article I, section 18, of the organic act of this state.

Referring to the above provision of our own constitution, Mr. Chief Justice LORD, speaking for the court in *Branson v. Gee,* 25 Or. 462 (36 P. 527, 24 L. R. A. 355), said:

". . . Under this provision the private property of the citizen cannot be taken against his will for any purpose other than a public use, nor, except in case of the state, without just compensation first assessed and tendered. With the state it is not a condition precedent that the compensation should precede or be concurrent with the taking of private property for public use. It may appropriate such property without compensation being first assessed and tendered, but it must make

provision by which the party whose property has been seized can obtain just compensation for it. Nor is this all; when the public exigencies demand the taking of private property for public use, it must be done by due process of law. The constitution of the United States provides that the 'state shall not deprive any person of life, liberty, or property, without due process of law': Article XIV., section 1, Amendments. 'Due process of law', Earle, J., said, 'is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature,' and that, generally stated, it meant 'an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights': Stuart v. Palmer, 74 N. Y. 191, 30 Am. Rep. 289.''

In *Hill v. Boston*, 122 Mass. 344 (23 Am. Rep. 332), in an opinion written by Mr. Chief Justice Gray, the court said:

"If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river, or a natural watercourse, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort, to the same extent that any corporation or individual would be liable for doing similar acts. Anthony v. Adams, 1 Met. 284, 285. Lawrence v. Fairhaven, 5 Gray, 110. Perry v. Worcester, 6 Gray, 544. Parker v. Lowell, 11 Gray 353. Wheeler v. Worcester, 10 Allen 591. So if a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another to his injury, it is liable to him in an action of tort. Proprietors of Locks & Canals v. Lowell, 7 Gray 223. Hildreth v. Lowell, 11 Gray 345. Haskell v. New Bedford, 108 Mass. 208. But in such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act, causing a direct injury to the property of another, outside of the limits of the public work."

In *Kehoe v. Rutherford,* 74 N. J. L. 659 (65 Atl. 1046, 122 Am. St. Rep. 411), the court said:

"It is a rule of law, of very considerable importance, and which is certainly settled in this state, that an action will not lie in behalf of an individual who has sustained special damage from the neglect of a public corporation to perform a public duty: Pray v. Mayor and Common Council of Jersey City, 32 N. J. L. 394; Durkes v. Town of Union, 38 N. J. L. 21; Waters v. Newark, 56 N. J. L. 361, 28 Atl. 717.

"But it is also a rule of law of equal importance that the exemption of a municipal corporation from actions by individuals suffering special damage from its neglect to perform or its negligence in performing public duties, whereby a public wrong is done for which an indictment will lie, does not extend to actions where the injury is the result of active wrongdoing chargeable to the corporation: Durkes v. Town of Union, 38 N. J. L. 21; Hart v. Freeholders of Union, 57 N. J. L. 90, 29 Atl. 490.

"It is also the settled law of this state that a municipality has no right, by artificial drains, to divert surface water from the course it would otherwise take and cast it, in a body large enough to do substantial injury, on land where, but for such artificial drains, it would not go; Durkes v. Town of Union, 38 N. J. L. 21; West Orange v. Field, 37 N. J. Eq. 600, 45 Am. Rep. 670; Field v. West Orange, 46 N. J. Eq. 183, 2 Atl. 236; Soule v. Passaic, 47 N. J. Eq. 28, 20 Atl. 346; Miller v. Morristown, 47 N. J. Eq. 62, 20 Atl. 61, 48 N. J. Eq. 645, 20 Atl. 20."

In a note following, on page 413 of 122 Am. St. Rep., it is said:

"A Municipal Corporation has no greater right than a natural person to divert surface water in large quantities by an artificial channel upon the land of another, except that it may do this in the exercise of the right of eminent domain, upon making just compensation as required by the constitution: Elser v.

Village of Gross Point, 223 Ill. 230, 114 Am. St. Rep. 326, . . . ."

In *Theiler v. Tillamook County*, 75 Or. 214 (146 P. 828), which was an action against the county by a landowner to recover the damage caused to his premises by the construction of a fill, bridge and culvert in a county road which changed the ancient course of a natural stream and discharged the water on the premises of the plaintiff, it was held that the action could be maintained, the court saying:

"Though a purely municipal corporation does not ordinarily sustain to a person injured by its negligence the exact relation of a quasi public corporation, it is believed that the analogy is sufficient to render a county liable in damages for a trespass upon private property when such invasion practically amounts to a taking of any part of the premises without condemnation."

In *Giaconi v. City of Astoria*, 60 Or. 12 (113 P. 855, 118 P. 180, 37 L. R. A. (N. S.) 1150), among other things the court said:

". . . In the leading case of Perry V. Worcester, 6 Gray (Mass.) 544, 547, (66 Am. Dec. 431), the court, speaking by Chief Justice Shaw, lays down the rule that the exercise of the governmental function exonerates a municipality from liability for such damages as necessarily results from the act. 'But', says the learned judge, 'this presupposes that the public work thus authorized will be executed in a reasonably proper and skillful manner, with a just regard to private owners of estate. If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskillful manner of doing it. Such damage to private property is not warranted by the authority under color of which it is done, and is not justifiable by it. It is unlawful, and wrong, for the redress of which an action of tort will lie.' "

■ The discharge of large quantities of surface water upon plaintiff's premises by the city of Gresham, which, but for the acts of the city, would have flowed past the plaintiff's premises on the opposite side of the street without injury to his property, was a direct invasion by the city of the property rights of the plaintiff for which the city is answerable in damage.

Finding no error, the judgment appealed from is affirmed.