Argued February 21, reversed March 21, 1951

# LEVENE ET UX. *v.* CITY OF SALEM
229 P. 2d 255

*Asa L. Lewelling,* of Salem, argued the cause and filed a brief for appellants.

*Chris J. Kowitz,* of Salem, City Attorney for City of Salem, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

HAY, J.

The plaintiffs own and operate a veterinary hospital in the city of Salem. The hospital is conducted in a building owned by plaintiffs, located on the east side of the Pacific Highway upon an irregularly shaped tract of land, measuring roughly 78 feet by 350 feet, with its shorter side abutting upon the highway. The building is partly of wooden frame and partly of concrete construction, and has an area of about 20 feet by 40 feet. There is within plaintiffs' property a draw or gully running easterly, roughly at right angles to the Pacific Highway. The highway crosses the gully on a fill. Plaintiffs' building comprises a single story, at highway level, and a basement thereunder. The

basement is erected upon the bed of the gully. It is of concrete, and is built entirely above ground. Along the bottom of the gully there is a small natural watercourse, having a bed of an average width of about three feet within banks varying in depth from about two feet to about eight feet. One corner of the plaintiffs' building formerly extended slightly into the bed of the stream, the water being carried under the building in two drain tiles. At the time of the happening of the incidents hereinafter referred to, the stream passed under the Pacific Highway through two 24-inch tiles.

The original complaint was filed August 17, 1948. It alleged substantially as follows: In the month of November, 1947, defendant city excavated a ditch approximately 650 feet long and 30 inches wide, having a maximum depth of four feet, draining water into said watercourse from an area which previously had only surface run-off. Such drainage had the effect of increasing the rate of speed of the run-off from said area. In or about the month of October, 1947, defendant extended a 14-inch tile, which had been laid on and along the easterly edge of the Pacific Highway, from a point approximately 400 yards south of plaintiffs' premises to and into said watercourse, which tile so extended discharged into said watercourse water which had not theretofore flowed therein. In the month of November, 1947, defendant laid approximately 57 feet of 30-inch tile in the bed of said watercourse, near the southeast corner of plaintiffs' building, but not connected with the 24-inch tiles running under the Pacific Highway. The laying of such tile had the effect of accelerating the flow of water in the watercourse, and increased the amount of water previously carried

therein between the outfall of said 30-inch tile and the inlet of said 24-inch tile. Prior to December 29, 1947, said stream had never overflowed its banks to the extent of flooding the basement of plaintiffs' building, but on that date it overflowed its banks and flooded the basement of plaintiffs' building to a depth of 18 inches. On or about January 6, 1948, the stream again overflowed, and flooded said basement to a depth of 51 inches. Such flooding was proximately caused by the acts of defendant in constructing the ditches and laying the tile above referred to, while failing and neglecting to enlarge the capacity of the drainage of the stream under the Pacific Highway. Prior to performing such acts, defendant was aware of the fact that plaintiffs were using the building on their said premises as a veterinary hospital. The flooding of said building caused plaintiffs to suffer certain specified damages to real and personal property and to the good will of their business. They prayed for injunctive relief, for $7,556.00 damages, and for costs and disbursements.

Defendant city answered by general denial. On February 24, 1949, plaintiffs filed a supplemental complaint, wherein they alleged that, on the morning of February 10, 1949, said stream again overflowed, and flooded plaintiffs' basement to a depth of approximately seven feet, causing further damage to plaintiffs' personal property; and that, on the morning of February 17, 1949, it overflowed once more, and flooded plaintiffs' basement to a depth of approximately eight feet, causing further damage to plaintiffs' personal property and damage to their real property. In respect of these damages plaintiffs demanded judgment for an additional $6,755.36.

Defendant again answered by general denial, and affirmatively alleged that plaintiffs were contributorily negligent in the premises, in that, having known that the waters of the stream were rising and heavy rains were falling, and having had a last clear chance to remove their personal property from their building undamaged, they failed to do so.

After a hearing, the circuit court judge gave judgment in favor of plaintiffs in the sum of $100.00, with costs. They have appealed from such judgment.

■■ Although the watercourse involved in this case is a very small one, nevertheless it comes within a definition of a watercourse approved by this court, i. e., "a living stream of water, within well-defined banks and channel." *Simmons v. Winters,* 21 Or. 35, 39, 27 P 7. Plaintiffs, as riparian owners upon the stream, are entitled to the rights and privileges of such ownership. *Miller v. City of Woodburn,* 126 Or. 621, 625, 270 P 781. Included therein is the right to insist that the natural flow of the stream shall not, by artificial means, be increased to their detriment. 56 Am Jur, Waters, 509, § 17; *Kamm v. Normand,* 51 Or. 9, 14, 91 P 448, 11 L.R.A. N.S. 290, 126 Am. St. Rep 698.

■ A municipality is liable in damages if it collects diffused surface waters into a drain, and, through such drain, empties them, either immediately or by force of gravitation, upon a person's land. *Ulmen v. Town of Mt. Angel,* 57 Or. 547, 550, 112 P. 529, 36 L.R.A. N.S. 140; *Harbison v. City of Hillsboro,* 103 Or. 257, 274, 204 P. 613. It is quite generally held that such action upon the part of a municipality amounts to a direct tresspass. Annotation, 173 A.L.R. 1044. The gist of the injury complained of in the present case is the casting of an increased volume of water into the watercourse

crossing plaintiffs' premises, without there being an adequate outlet therefor. Such a positive act is a tort "arising from wrongful and unauthorized conduct rather than negligence, and the maxim that a man must so use his own as not unnecessarily to do injury to another is applicable." 63 C.J.S. Municipal Corporations, 280, § 883. See also *Rix v. Town of Alamogordo,* 42 N. Mex. 325, 77 P. 2d 765, 766; *Ashley v. City of Port Huron,* 35 Mich. 296, 297, 301, 24 Am. Rep. 552; *Thoman v. City of Covington,* 23 Ky. L.R. 117, 62 S.W. 721, 722. For damages directly resulting from such active wrongdoing the city is without immunity. *Adams v. City of Toledo,* 163 Or. 185, 191, 96 P. 2d 1078; *Weis v. City of Madison,* 75 Ind. 241, 39 Am. Rep. 135, 139, 143.

■ Defendant city contends, however, that it may without liability drain surface water from land, by means of artificial ditches or tiles, into a stream or onto lands where it would naturally flow, even though such natural flowage is thereby accelerated. As an abstract statement, this is true, but in so doing the municipality must act with a reasonable consideration for the rights of the lower proprietor. If its acts cause an unusual and unreasonable amount of water to be emptied upon the lower land, it is liable in damages to the owner thereof. *Whitney v. Willamette Ry. Co.,* 23 Or. 188, 191, 31 P. 472; *Giaconi v. City of Astoria,* 60 Or. 12, 31, 113 P. 855, 118 P. 180, 37 L.R.A. N.S. 1150; Annotation, 85 Am. St. Rep. 729, 730, 733; McQuillin, Municipal Corporations, 2d ed., Rev. vol. 6, p. 1244, § 2874; 63 C.J.S., Municipal Corporations, 274, 275, § 882.

■ Under the rule of the civil law in such cases, which has been adopted by most of the courts of this country, including this court, the owner of a tract of land of

relatively higher elevation has the right to have diffused surface water flowing or coming naturally upon his premises pass through the natural channels of drainage onto or over a lower tract. The owner of the upper or dominant tract may construct thereon such drains and ditches for agricultural purposes as may be required by good husbandry, although such construction may result in increasing the flow of water in the natural channels. The owner of the lower tract has no right to complain of the increase, if the operations of the upper proprietor have been carried on with due regard for the lower proprietor's interests, and in such manner as to cause him no unreasonable inconvenience. *Whitney v. Willamette Ry. Co.*, supra, 23 Or. 188, 193, 31 P. 472; *Harbison v. City of Hillsboro*, supra, 103 Or. 257, 272, 273, 204 P. 613; *Rehfuss v. Weeks*, 93 Or. 25, 32, 182 P. 137. Municipalities are governed in this connection by the same rules as natural persons. *Harbison v. City of Hillsboro*, supra.

■ The periodic flooding of plaintiffs' building brought about by defendant's acts constitutes a private nuisance. 39 Am. Jur., Nuisances, 298, § 16. The complaint, in seeking injunctive relief against such flooding, is based on nuisance. No doubt the nuisance was aggravated by the fact that the flood water carried a certain amount of polluted drainage onto plaintiffs' premises. *Ulmen v. Town of Mt. Angel*, supra, 57 Or. 547, 550, 112 P. 529, 36 L.R.A. N.S. 140; *Kramer v. Sweet*, 179 Or. 324, 331, 169 P. 2d 892; *Adams v. City of Toledo*, supra, 163 Or. 185, 191, 96 P. 2d 1078; Annotations, 75 A.L.R. 1197, 1202, 173 A.L.R. 1047; 38 Am. Jur., Municipal Corporations, 355, § 647; ibid. 357, § 648. Although the polluted drainage may have originated from dwellings within the drainage area, it was

the defendant's acts in causing the stream to flood plaintiffs' premises which carried the polluted drainage thereto.

█ It is contended that the plaintiffs failed to prove that the flooding of their property was the proximate result of negligent acts of the defendant. There was competent testimony showing that plaintiffs' premises had never been flooded prior to December 29, 1947. The first heavy rain which occurred after the city's alteration in the drainage system resulted in such flooding, and every heavy rain thereafter caused additional flooding. No flooding had occurred previously, even in times of equally heavy rainfall. Proof of negligence, as we have shown, was unnecessary. There was sufficient proof of active wrongdoing on defendant's part to establish its liability. Proof of proximate cause was, in our opinion, sufficient.

In this connection, defendant contends strongly that the evidence shows that the flooding of plaintiffs' premises was not due to any act of defendant, but rather to a combination of circumstances for which defendant was not responsible. The circumstances included a considerable recent increase in the number of dwellings erected within the drainage area, a consequent increase in drainage into the stream, the elimination of swampy areas which formerly served as reservoirs to hold back surface water, and, more immediately, a period of unusually heavy rainfall, followed by a freezing of the surface of the ground which facilitated a quick run-off. These matters were fully testified to by defendant's witnesses upon the hearing.

█ Defendant, however, took no cross-appeal from the lower court's decree, and therefore must be presumed to be satisfied therewith. *McCoy v. Crossfield,*

54 Or. 591, 592, 104 P. 423; *Davis v. Davis,* 123 Or. 667, 669, 263 P. 914; *Stark v. Stark,* 128 Or. 683, 684, 275 P. 692; 3 Am. Jur., Appeal and Error, 402, § 865. The decree having been in favor of plaintiffs, the circuit court judge must have determined that the equities were in their favor. But even if such decree were erroneous, the only method of determining that question is by appeal to this court. *Carlson v. Bankers Discount Corp. et al.,* 107 Or. 686, 699, 215 P. 986.

The city's principal reliance is upon a provision in its charter limiting its liability for damages in certain cases to the sum of $100. The charter provision is as follows:

"Section 25. (IMPROVEMENT OF PARKS, STREETS, ALLEYS, LAWNS, ETC.: PARK BOARD.) The city council shall have power and is authorized, whenever it deems it expedient, to improve the public grounds within said city, to define what shall constitute parks, boulevards, streets, alleys, and cycle paths, and regulate their use; to establish and open streets and alleys within the limits of said city in continuation of those now or hereafter laid out; to establish or alter the grade and improve any street or part thereof now or hereafter laid out or established within the limits of said city, and to lay down all necessary sewers and drains; and to build and maintain or cause to be built or maintained any street or part thereof, and they shall establish the grade of said streets or parts thereof and direct the character of materials to be used in the improvement thereof and the manner of such improvements; and they shall direct the character of materials used in the manner of building all streets, and the said improvements of streets herein provided for shall be done at the expense of the owners of adjacent property; and the said city shall not in any event be liable in damages to any person for any injury by any

defect or dangerous place at or in any street, alley, bridge, public grounds, public buildings, or ditch unless said city shall have an actual notice of such defect or dangerous place, and a reasonable time thereafter in which to repair or remove such defect or dangerous place before the happening of such accident or injury; and in no case shall more than $100 be recovered as damages from the city for such accident or injury; provided, however, that the provisions of this act shall not apply to grounds owned or controlled by the state of Oregon or by the United States. * * *''

 It is apparent that the circuit court judge was of the opinion that the foregoing limitation of liability was applicable to the present case. We think otherwise. It is our opinion that the charter limitation has reference only to liability for damages for injuries arising out of an accident or injury suffered by any person by reason of any defect or dangerous place resulting from defective construction, operation or maintenance of any of the public ways, improvements or facilities mentioned in the section, but that the limitaton does not protect the city from liability to answer in damages for injuries effected by invasion of private property. In construction and maintenance of streets and other public facilities the city acts in a public or governmental capacity, and it is held generally that when so acting it is not liable at the suit of a private person who is injured thereby. *Etter v. City of Eugene,* 157, Or. 68, 70, 69 P. 2d 1061; *Noonan v. City of Portland,* 161 Or. 213, 221, 225, 238, 88 P. 2d 808; *Platt v. Newberg,* 104 Or. 148, 154, 163, 205, P. 296; *Wold v. City of Portland,* 166 Or. 455, 463, 112 P. 2d 469, 133 A.L.R. 1207; *Pullen v. Eugene,* 77 Or. 320, 325, 146 P. 822, 147 P. 768, 1191, 151 P. 474; *Blue v. City of Union,* 159 Or. 5, 12, 75 P. 2d 977.

196

■ Where, however, a municipality creats a private nuisance upon land, it cannot hide behind a shield of governmental immunity, but must respond in damages to the owner of the land. *Richards v. Washington Terminal Co.*, 233 U.S. 546, 34 S. Ct. 654, 58 L. ed. 1088. So, in *Stephens v. City of Eugene*, 90 Or. 167, 172, 175 P. 855, this court held that while plaintiff, as a riparian owner, was obliged to endure the discomfort entailed by ordinary floods in a stream, he was not required to tolerate an artificial flood continually maintained therein by someone acting without right. And, in *Metzger v. City of Gresham*, 152 Or. 682, 688, 54 P. 2d 311, we held that the exemption of a municipal corporation from actions by persons suffering special damage from its neglect to perform or its negligence in performing public duties does not extend to actions where the injury is the result of active wrongdoing on the part of the corporation. We held, further, that a municipal corporation has no right to divert surface water by artificial drains from the course which it would otherwise take and cast it, in a body large enough to do substantial injury, upon land where but for such artificial drainage it would not go. The only manner in which it might be lawfully permitted to do this, we said, was through the exercise of the right of eminent domain, upon making just compensation as required by the constitution. See also 38 Am. Jur., Municipal Corporations, 357, § 648.

■ Where the acts of the municipality result in a direct and continuous trespass upon real property, as by diverting the flow of a stream from its natural course onto the property, or by flooding the property through a drain or sewer so constructed that such flooding is a necessary result of the construction, this con-

stitutes a "taking" within the meaning of a constitutional provision requiring compensation to be made for property taken for a public use. And this is so even if the owner of the property is not actually dispossessed or the property completely destroyed by the taking. *Morrison v. Clackamas County,* 141 Or. 564, 569, 18 P. 2d 814; *Stephens v. City of Eugene,* supra, 90 Or. 167, 173, 175 P. 855; Annotations: 75 A.L.R. 1198, 173 A.L.R. 1045; 128 A.L.R. 1195, 1197. In such cases, neither the state nor any municipal corporation may claim exemption from liability. *Metzger v. City of Gresham,* supra, 152 Or. 682, 685, 686, 54 P. 2d 311. We need not consider whether the trespass in the case at bar was a mere nuisance or was of such a magnitude as to amount to a taking of the property in the sense forbidden by the constitution. Cf. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 67 L. ed. 322, 43 S. Ct. 158, 28 A.L.R. 1321, 1324. In either event, it would appear that the municipality is liable to respond suitably in damages.

The city asserts that it is not liable for the negligence of its officers and employees engaged in the performance of governmental functions. *Etter v. City of Eugene,* supra, 157 Or. 68, 70, 69 P. 2d 1061; *Wold v. Portland,* supra, 166 Or. 455, 463, 112 P. 2d 469, 133 A.L.R. 1207. While no doubt the draining of swampy land, in the interests of public health, is a governmental function, the city is not rendered immune from liability if, as we have said, it creates or maintains a nuisance in the performance of such function. McQuillin, Municipal Corporations, 2d ed., Rev. Vol. 6, 1135, § 2823. Moreover, there was evidence that the changes in the drainage system, of which the plaintiffs complain, were made by the city's employees under

the direction of an assistant city engineer, the work being a part of the duties of the city engineer, and from this the trial judge was warranted in inferring that the city had authorized and directed the doing of the work. *Metzger v. City of Gresham,* supra, 152 Or. 682, 684, 54 P. 2d 311.

■ The city, of course, had authority to take whatever measures might be necessary to promote the health of its inhabitants, and in that connection to provide means for the removal of standing water. When, however, in the process of taking necessary measures for the protection of the public health, the city does invade property rights in the manner complained of, neither its charter immunity from damages for torts, nor its immunity for injuries inflicted in the exercise of governmental functions, will save it from having to answer in damages. *Maxwell v. Miami,* 87 Fla. 107, 100 So. 147, 33 A.L.R. 682, 686.

■ It is contended that the city was not negligent in increasing the flow of surface water in the watercourse; that it was bound to exercise only reasonable care in providing means for carrying off the surplus water; and was not an insurer against or liable for damages caused by unprecedented floods. There was no evidence that the rain storms which brought about the flooding of plaintiffs' property were unprecedented. The facts that the city was not under any duty to maintain the Pacific Highway, or liable for damages due to negligence in the construction or maintenance of that highway, are irrelevant. The two 24-inch tiles which carried the water of the stream beneath the Pacific Highway were apparently sufficient for that purpose until the city's improved drainage system overburdened the watercourse beyond its capacity. If,

as was evidently the case, the outlets under the highway were insufficient to accommodate the additional water, then the city is liable for having diverted the water into an insufficient channel. *Birmingham v. Estes,* 229 Ala. 671, 159 So. 201, 97 A.L.R 114, 116.

These considerations lead us to the conclusion that, in limiting the amount of plaintiffs' recovery to the sum of $100, the trial court erred. This being an appeal from a decree in equity, we are required under the statute to try the suit anew upon the transcript and the evidence accompanying it. § 10-810, O.C.L.A.; *Gentry v. Pacific Livestock Co.,* 45 Or. 233, 236, 77 P. 115. We have carefully considered the evidence of damages, both to personalty and to real property, which was submitted by the plaintiffs. The items thereof were carefully detailed, and the evidence of injury and of the measure of damages was all received without objection on the part of defendant. In our opinion, the evidence was adequate to support a judgment. This applies to all of the damages sought excepting those for loss of good will. For this item, the plaintiffs claimed damages in the sum of $1,250 but on the trial this claim was reduced to $1,000 by the testimony of ·Dr. Levene, one of the plaintiffs.

Although we have doubts on the subject, we shall assume, without deciding, that damages for loss of good will resulting from tort may be recovered in a proper case. There is some authority therefor. *Texas & P. R. Co. v. Mercer,* 127 Tex. 220, 90 S.W. 2d 557, 106 A.L.R. 1299, 1304; *Ewing v. Foley,* 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627, 636. Good will is recognized by the courts as being property, although it is a species of property which is always incidental to the tangible property of the business. *Kaller v. Spady,* 144 Or. 206,

217, 10 P. 2d 1119, 24 P. 2d 351. It is said that the rule for measuring damages for injury to or destruction of good will is the same as that for measuring damages for injury to or destruction of any other species of personal property. 24 Am. Jur., Good Will, 821, § 29; *Scott v. Doggett* (Tex. Civ. App.) 226 S.W. 2d 183, 187, 188. We are cautioned, however, against the allowance of speculative or conjectural damages in this connection. *Virtue v. Creamery Package Mfg. Co.*, 123 Minn. 17, 142 N.W. 930, L.R.A. 1915B 1179, 1194. The evidence must afford sufficient data from which the court or jury may properly estimate the amount of damages, which data shall be established by facts rather than by mere conclusions of witnesses. 25 C.J.S., Damages, 813, § 162. It appears, however, that there is no specific rule for determining the value of good will, and that each case must be considered and determined in the light of its own particular facts. *Schuh Trading Co. v. Commissioner of Internal Revenue* (C.A. 7th) 95 F. 2d 404, 410; 38 C.J.S., Good Will, 953, § 6. Elements which may be considered are, length of time the business has been in existence; the nature and character of the business; its success or lack thereof; its average profits; and the probability of its continuance under the same name. 2 Sutherland, Damages, 4th ed., p. 1459, § 448. Past profits may be established, and the value of the good will estimated therefrom as a basis, subject to being reduced by a showing of a depression in trade or other circumstances that would tend to make the business less valuable. 1 Sedgwick on Damages, 9th ed., p. 513, § 254.

█ It is no doubt competent for the owner of a business to give his opinion in evidence of the value of good will. 32 C.J.S. Evidence, 288, § 545b (2). We think,

however, that his competency is based not upon the simple fact that he is the owner, but because he is "thoroughly conversant with the business and with its management in all its details," and that his opinion should be given only after stating the facts showing his competency. *White, Corbin & Co. v. Jones,* 79 N.Y.S. 583, 586. Dr. Levene, one of the plaintiffs, testified as to the value of loss of good will in the case at bar. He testified that, in one of the floods, four dogs, which had been committed to his care for treatment, were drowned; that, because of the loss of those dogs, plaintiffs had had considerable grief and quite a bit of notoriety; that the owners of the dogs were very angry; and that, in his estimation, the damage to the good will of the business by the loss of the dogs "and things of that sort" that were caused by the flood was roughly about $1,000. He arrived at this figure by the following reasoning: "We figured these four people * * * contacted at least another eight or so and, in turn, we have a progressive number of people which are contacted adversely so far as we are concerned and, naturally, the resulting loss or reduction of number of clients that would be willing to come to the hospital, and the damage to the reputation of the hospital."

It is quite probable, we think, that some loss of good will was suffered by plaintiffs in the premises. But we are obliged to conclude that Dr. Levene's testimony was not competent proof of the amount of such damage. It was no more than pure speculation and conjecture, and it cannot support any judgment for that particular item.

The aggregate of the damages proved by plain-

tiffs is $5,405.86, for which, in our opinion, they are entitled to judgment.

We are informed by appellants' brief that the failure of the court to grant injunctive relief in the premises was intended to be assigned by them as error, but that, since the appeal was taken, a new and larger conduit has been installed under the Pacific Highway in place of the two 24-inch tiles, and that this appears to be a corrective measure which will eliminate the periodic flooding of plaintiffs' premises. The question of injunctive relief, therefore, is eliminated from the case.

The decree and judgment appealed from is reversed, and in lieu thereof plaintiffs will be awarded decree and judgment against the defendant in the sum of $5,405.86, with interest at the rate of six per cent per annum on the sum of $100, the amount of the circuit court's judgment, from May 16, 1949, the date of such judgment, and for their costs and disbursements in this and in the circuit court.