Argued August 20, affirmed November 13, 1973

# LANNING ET UX, *Respondents, v.* STATE HIGHWAY COMMISSION (No. 41001), *Appellants.*

515 P2d 1355

*Sam F. Speerstra,* Salem, argued the cause for appellants. With him on the brief were Rhoten, Rhoten & Speerstra, Salem.

*James D. Vick,* Salem, argued the cause for respondents. With him on the brief were Stager & Vick, Salem.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, P. J.

This is an action in tort for negligence. The issues presented relate to defendant-appellant Highway Commission's and its engineer's defense of immunity.

Thomas Creek flows from the Western Cascade Mountains through Linn County before entering the South Santiam River. On January 20 and 21, 1972, heavy rains raised the level of Thomas Creek and considerable amounts of slashing, tree trunks and debris were carried in the flood waters. The assorted debris accumulated on the supports of Schindler Bridge which carries State Highway 226 across the creek several miles east of Scio. At the height of the flooding the western approach to the bridge was washed out by water diverted by the debris piled against the bridge. The home of Mr. and Mrs. Lanning located immediately upstream from the bridge on the east bank was inundated for a short period at the crest of the flood.

The Lannings initiated this proceeding against the State Highway Commission and Mr. Porter, highway engineer. The relevant portions of their complaint were:

"VIII.

"That at said time and place the defendants were negligent and careless in the following respects:
"1. That the agents of the defendants, having knowledge of the damming of the river by forest growth, failed and neglected to remove the same.
"* * * * *
"3. The agents of the defendants, knowing the danger of damming on Thomas Creek by forest growth, impounded by the bridge piers and structure, failed and neglected to remove the

same, well knowing that the flooding waters were endangering property, particularly the plaintiffs['].

"IX.

"That said acts and omissions of negligence on the part of defendants was the proximate cause of the damage to plaintiffs' property."

The evidence produced at trial by plaintiffs consisted of accounts of how rapidly the waters of the creek rose, descriptions of the debris that accumulated against the bridge and the extent of flooding at the Lanning home. The flood waters entered the Lanning home at about 11 p.m., January 20.

A report from a United States Government Gaging Station 0.3 mile upstream from the bridge stated that the flood had crested at 12:30 a.m. the morning of January 21, 1972. The report also indicated that the debris at the bridge had caused "ponded conditions" and "backwater" that had raised the flood level at the station. The Lanning home was between the bridge and the gaging station.

Plaintiffs also showed that the bridge conditions were being watched by agents of defendants, beginning with routine patrols on the evening of January 19 and culminating with an inspection by the district engineer late in the evening of January 20. It was not until after 12:45 a.m. that the employes of defendants found the situation serious enough to warrant any action. They then closed the bridge and ordered a crane to remove the debris.

There was a conflict between the accounts of the amount of debris accumulation at the bridge given by plaintiffs' witnesses and by defendants' employes.

Testimony by defendants' witnesses indicated that their sole concern in calling a crane was to save the bridge structure and that they gave no thought to attempting to remove the debris to prevent flooding of the Lanning home.

The jury returned a verdict for the plaintiffs and judgment was had against defendants. Defendants now appeal and assign as error the trial court's (1) denial of defendants' objection to the introduction of any evidence by plaintiffs, (2) denial of defendants' motion for a nonsuit, (3) denial of defendants' motion for a directed verdict, and (4) the submission of a special verdict form to the jury in which the jury was asked to determine whether the defendants were negligent in failing to remove debris from the bridge piers.

The assignments of error raise two issues: (a) Are the defendants immune from liability under the "discretionary-duty-or-function" exception to a public body's general liability for its torts, and (b) must plaintiffs' cause of action fail because their remedy if any is in "inverse condemnation" rather than in tort for negligence?

(a) ORS 30.265 provides:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.

"(2) Every public body is immune from liability for:

"(a) Any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a

public body when such officer, employe or agent is immune from liability.

"\* \* \* \* \*

'(d) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"\* \* \* \* \*."

For defendants to be protected by the immunity retained for public bodies under ORS 30.265 (2), it must necessarily follow that the damage to plaintiffs' property resulted from either a "discretionary function or duty," ORS 30.265 (2) (d), or "an act or omission of an \* \* \* agent of a public body when such \* \* \* agent is immune from liability," ORS 30.265 (2) (a).

*Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR 3d 857 (1970), was a decision on the extent of the state's immunity for "discretionary" acts. It did not directly construe the meaning of the term "discretionary" employed in ORS 30.265 (2) (d) because the cause of action therein arose before the effective date of the law. However, the opinion was written with the statute in mind and the decision was intended to be controlling as to what was to be viewed as discretionary under the law. *Smith v. Cooper,* supra, 256 Or at 506, n 4.

The decisive factor stated in *Smith v. Cooper,* supra, is whether the allegations charged conduct which should not be reviewed by the judicial branch.

As is noted in *Smith,* the general rule in other jurisdictions is that while planning and designing of the road or highway is a discretionary function, maintenance is a ministerial function. 256 Or at 498.

Smith v. Cooper, supra, reached the conclusion that public employes are generally immune from liability for negligence in planning and designing highways. 256 Or at 511. The court there did not specifically hold that maintenance was not a discretionary function, but took pains to construe the allegations of negligent maintenance in that case to mean other than keeping in a state of repair.

In cases since Smith, we have stated that negligent failure to remove loosened rocks above a highway "might constitute highway maintenance and could be a ministerial act." Leonard v. Jackson, 6 Or App 613, 615, 488 P2d 838, Sup Ct review denied (1971). We also held, relying on Smith, that the Lane County Director of Public Works was immune from liability for alleged negligence in failing to design, redesign, construct or maintain an intersection so that it would be safe, in failing to erect warning signs and failing to inspect the intersection for dangers and defects. Weaver v. Lane County, 10 Or App 281, 499 P2d 1351 (1972).

■ While we have not previously so directly held, it appears that under the analysis of Smith v. Cooper, supra, as a general rule, maintenance of a highway is not a "discretionary function or duty," and defendants in such a case would be liable for their negligence. Smith v. Cooper, supra; Leonard v. Jackson, supra; cf., Croft v. Gulf & West./Highway Comm., 12 Or App 507, 506 P2d 541 (1972), Sup Ct review denied (1973).[1]

Defendants contend that because their agents had

---

[1] There may be some "maintenance" functions that could qualify as discretionary functions such as where policy decisions are made as to the amount of resources to be allocated to a given highway district. We need not decide questions of this nature here.

the power to decide how to best protect the safety of the bridge, and in doing so must necessarily choose between alternative courses of action, immunity should attach.

■ The fact that within a given "maintenance" situation the employes of defendants may be faced with alternative courses of action is not in itself grounds for finding "discretionary" immunity. Traditionally courts have thought of the question of immunity as being a case of distinguishing "discretionary" acts from "ministerial" acts. We have employed the following definition of ministerial acts in such a situation.

"A ministerial act is described as
" '* * * being one that is done "where the law prescribes and defines the act to be performed, with such precision and certainty as to leave nothing to the exercise of discretion, or judgment," in contrast to a judicial act [discretionary act] which "involves the exercise of discretion or judgment in determining whether the duty exists" * * *.' State, v. Nagel, 185 Or 486, 499, 202 P2d 640 (1949)." Weaver v. Lane County, supra, 10 Or App at 289.

■ This definition is of little usefulness when the question is one of a defendant's negligence. Questions of negligence invariably involve a determination of whether a defendant made the proper choice given alternative courses of action. The defendant is free to exercise judgment, but he must act reasonably. Thus in a negligence case it is questionable whether the literal meaning of this definition ever would apply. Smith notes that all or almost all acts performed by governmental employes involve some judgment of choice. "* * * The issue is really how much 'discretion' must be involved in the performance so as to render the

employee immune * .* *." *Smith v. Cooper,* supra, 256 Or at 499.

Generally, maintenance functions, that is, decisions made by highway employes as how best to maintain highways, involve none of the questions cited by *Smith* as being beyond the proper scope of examination by the judicial branch. Maintenance decisions involve the recognition of defects and dangerous conditions, and the taking of proper steps to prevent resulting injury. Courts and juries have traditionally been considered competent to determine the reasonableness of these types of decisions.

■ We find the decision to take or not to take action to remove the debris from the bridge piers was not part of a discretionary function or duty of defendants or of their employes, and that defendants have no immunity in this case.

■ (b) The second issue raised by the assignments of error is a more difficult question. Defendants contend that plaintiffs have a remedy, if at all, in inverse condemnation and therefore no remedy in tort.

Plaintiffs who have suffered damages as a consequence of acts of public bodies resulting in flooding have been able to recover on the theory that there has been a "taking" of their property for a public use. *Cereghino et al v. State Highway Com.,* 230 Or 439, 370 P2d 694 (1962); *Tomasek v. Oregon Highway Com'n,* 196 Or 120, 248 P2d 703 (1952); *Levene et ux. v. City of Salem,* 191 Or 182, 229 P2d 255 (1951); *Metzger v. City of Gresham,* 152 Or 682, 54 P2d 311 (1936); *Morrison v. Clackamas County,* 141 Or 564, 18 P2d 814 (1933); Oregon Constitution, Art I, § 18. Proving negligence is not necessary for a recovery

under this theory. _Levene et ux. v. City of Salem,_ supra.

This theory of recovery overlaps with liability in tort. Courts have allowed recovery on the theory of inverse condemnation in many instances as a means to avoid the concept of sovereign immunity. Note, _The Discretionary Exception and Municipal Tort Liability: A Reappraisal,_ 52 Minn L Rev 1047, 1058 (1968) ; Van Alstyne, _Modernizing Inverse Condemnation: A Legislative Prospectus,_ 8 Santa Clara Lawyer 1, 10 (1967) ; 3 Davis, Administrative Law Treatise § 25.05 (1958).

■ While inverse condemnation may have developed as a remedy because of the existence of sovereign immunity, the removal of sovereign immunity means, under appropriate circumstances, that alternative remedies now exist for a plaintiff whose property may have been damaged by the tortious act of a public body. The fact that plaintiffs may have an alternative remedy is no grounds for finding the remedy he has chosen should not lie.

This analysis, alone, however, does not dispose of defendants' argument. As we understand that argument, defendants are contending that because they have immunity from any action for negligence in design of the bridge, _Smith v. Cooper,_ supra, their agents owed no duty to plaintiffs to remove debris that was accumulating against that bridge because of its design.

■■ We disagree with defendants' analysis. The fact that the design of the bridge was one of several causal factors leading to the damage to plaintiffs' property does not provide defendants with immunity for the negligent acts of their employes. The evidence in this

case adequately supports the jury's finding that the agents were negligent in failing to recognize the seriousness of the danger posed by the accumulated debris and in waiting too long before taking action to alleviate such conditions. Given the facts of this case the question of whether these negligent acts were the proximate cause of the damage suffered by the plaintiffs was for the jury. *Allen v. Shiroma/Leathers,* 266 Or 567, 514 P2d 545 (1973).

Affirmed.