164      ANDERSON *v.* HENDERSON.

## GEORGE B. ANDERSON

*v.*

## FRANKLIN HENDERSON.

*Filed at Springfield March 28, 1888.*

1. SURFACE WATERS—*dominant and servient heritage.* The owner of a higher tract of land has the right to have the surface water falling or coming naturally upon his premises by rains or melting snow, pass off the same, through the natural drains, upon or over the lower or servient lands next adjoining, and the owner of the dominant heritage has, and ought to have, the right, by ditches and drains, to drain his own land into the natural and usual channels which nature has provided, even if the quantity of water in that way thrown upon the next adjoining lower lands be thereby increased.

2. While the owner of lower lands shall receive all water that naturally flows from the next higher lands, the owner of the higher lands may not open or remove natural barriers, and let on such lower lands water that would not otherwise naturally flow in that direction.

3. CHANCERY—*exceptions to master's report—how to be disposed of.* A defendant in chancery can not assign for error the neglect of the court to dispose of the complainant's exceptions to the master's report. But a decree in favor of the complainant on the points covered by his exceptions to the master's report, is in effect sustaining the exceptions, and the omission to make a formal order sustaining the same is not such error as to call for a reversal.

4. SAME—*affirmative relief to defendant.* Affirmative relief can not be granted to a defendant upon answer. That can only be granted on cross-bill.

5. SAME—*decree—finding facts as to matters not in issue.* It is improper for the court, in its decree, to find the facts in relation to a matter not made an issue by the pleadings.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. W. B. CARLOCK, for the plaintiff in error:

The common law, as well as the civil law, principles of drainage would allow the plaintiff in error to make ditches anywhere on his land, through natural depressions, in order to render the same dry and tillable, even though the flow of

water is increased on the lower proprietor. *Laney* v. *Jasper,* 39 Ill. 46; *Gormley* v. *Sanford,* 52 id. 158; *Ogburn* v. *Connor,* 46 Cal. 347; *Kauffman* v. *Griesemer,* 26 Pa. St. 415; *Gannon* v. *Hoigdon,* 10 Allen, 106; *Waffle* v. *Railroad Co.* 58 Barb. 413; *Peck* v. *Herrington,* 109 Ill. 611; Cooley on Torts, 575-577; Angell on Water-courses, (6th ed.) secs. 108 a, 108 s.

The owners of lands may construct drains for agricultural purposes, only, into any natural water-course, or any natural depression whereby the water will be carried into any natural water-course. Laws of 1883, p. 78, sec. 1.

That the owner of the dominant estate has an unqualified right to drain off his land all surface waters, for agricultural purposes, see *Rowston* v. *Taylor,* 11 Exch. 269; *Martin* v. *Jett,* 12 La. 656; Sess. Laws of 1883, p. 78.

The rule of the common law in regard to the servient and dominant heritage never has prevailed in Illinois, but, upon the contrary, the more liberal rule of the civil law in respect thereto has been in force. *Hoyt* v. *City of Hudson,* 27 Wis. 659.

The court erred in not decreeing that the embankment in a hedge was an obstruction, and should be removed, or several large and ample water-ways opened through the same.

That a person can not, by an embankment or other artificial means, obstruct the water in its natural flow, and thus throw it back upon the upper proprietor, see *Gillham* v. *Railroad Co.* 49 Ill. 484; *Nevins* v. *City of Peoria,* 41 id. 502; *Gormley* v. *Sanford,* 52 id. 158; *Bowman* v. *City of New Orleans,* 27 La. Ann. 501; *Ogburn* v. *Connor,* 46 Cal. 347; *Martin* v. *Riddle,* 26 Pa. St. 415.

Mr. FRANK R. HENDERSON, for the defendant in error:

None of the findings of the court have been excepted to, and the plaintiff in error is now barred from doing so. *Jewell* v. *Paper Co.* 101 Ill. 65; *Prince* v. *Cutler,* 69 id. 267; *Clark* v. *Laughlin,* 62 id. 278; *Pennell* v. *Insurance Co.* 73 id. 303.

In a chancery case, it is presumed that the finding of the facts by the court was warranted, unless the testimony shows to the contrary; and a reviewing court will not disturb the same, even where it has a well founded doubt as to how the question should have been decided. *Groenendyke* v. *Coffeen*, 109 Ill. 326; *McCormick* v. *Miller*, 102 id. 208; *Long* v. *Fox*, 100 id. 43; *Richards* v. *People*, id. 424; *Coari* v. *Olsen*, 91 id. 273; *Hughes* v. *Frisby*, 81 id. 188.

The right of the owner of the superior heritage to drainage is based simply on the principle that nature has ordained such drainage. It is but plain and natural justice that the individual ownership, arising from social laws, should be held in accordance with pre-existing laws and arrangements of nature. As water must flow, and some rule in regard to it must be established where land is held under the artificial titles created by human law, there can clearly be no other rule, at once so equitable and so easy of application, as that which enforces natural laws. *Gormley* v. *Sanford*, 52 Ill. 158; *Miller* v. *Pilgrim*, 7 Bradw. 306; *Hicks* v. *Silliman*, 93 Ill. 255; *Evans* v. *Merriweather*, 3 Scam. 492.

Surface water can not be changed by artificial means, and if, by such means, the flow is changed, an injunction will be given. *Railroad Co.* v. *Morrison*, 71 Ill. 616; *Railroad Co.* v. *Cox*, 91 id. 500; *Nevins* v. *City of Peoria*, 41 id. 502; *Miller* v. *Pilgrim*, 3 Bradw. 476; Addison on Torts, 59, 82; *Johnson* v. *Rea*, 12 Bradw. 335.

Neither party has a right, with respect to water or drainage, to so use, improve or change his land from a state of nature as to materially injure the other. *Herrington* v. *Peck*, 11 Bradw. 62. See, also, *Templeton* v. *Vasloe*, 72 Ind. 134; *Dickerson* v. *City of Worcester*, 7 Allen, 19; *Butler* v. *Peck*, 16 Ohio St. 334; *Martin* v. *Riddle*, 26 Pa. St. 416; *Miller* v. *Lawback*, 47 id. 154; *Kauffman* v. *Griesemer*, 26 id. 407; *Livingston* v. *McDonald*, 21 Iowa, 160; *Pettigrew* v. *Evansville*, 25 Wis. 223;

*Waffle* v. *Railroad Co.* 58 Barb. 413; *Lattimore* v. *Davis,* 14 La. 161.

Henderson was under no obligation to keep the ditch open which he had dug to place his tile in, or maintain a ditch for Anderson's benefit. The owner of land need not keep ditches open for the benefit of others, but may fill them up, at any time, level with the natural surface. *Gormley* v. *Sanford,* 52 Ill. 158; *Kuhner* v. *Griesbaum,* 59 id. 50.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case is for an injunction, and was brought in the circuit court of McLean county by Franklin Henderson, against George B. Anderson. It appears from the allegations of the bill, complainant owns a farm in section 6, in Towanda township, and that defendant is a life tenant, and is in possession of a farm immediately west of the one owned by complainant,—both farms consisting of a quarter section, as the same were originally surveyed by the government. The facts relied upon for relief are stated with the usual fullness, but it will only be necessary to an understanding of the decision to be rendered, to state the principal allegations of the bill.

It is alleged, that on the land of defendant there are many large ponds and sloughs, where large quantities of water collect, and that the natural and usual outlet to such ponds and sloughs is not over and across the land of complainant, but that such outlet is to the west and south-west of defendant's land. It is also shown, that prior to committing the alleged injuries for which relief is now sought, defendant dug and constructed a large ditch on his land, whereby large quantities of water were diverted from their natural course onto and across the land of complainant, which occasioned great damage to him; that he brought his suit at law to recover such damage from defendant; and that afterwards defendant confessed nominal damages in favor of complainant in the suit

at law, and agreed to, and did, fill up such ditch level with the natural surface of the land. The point where the ditch was filled up is stated to be five hundred and ninety-six feet west of the half section line between the lands of the respective parties, and seven hundred and twenty feet north of the southwest corner of complainant's land. Another ground of relief alleged is, that at the point where the ditch was so filled up there is an elevation of land that is naturally the dividing line between the waters that should flow east, towards complainant's land, and the water naturally flowing westward from him, and that at the time the ditch was filled up, defendant agreed, and it was decided by mutual friends of the parties, to whom the matter was referred for determination, that such ridge or elevation of land was the natural dividing line between the waters that should flow towards complainant and those that should not flow towards him, and that then and there defendant pledged himself that such ridge should always be the dividing line, and that the surface of the same should not at any time be changed so as to divert water across or through such ridge onto complainant's land, and in consideration of which complainant agreed to receive nominal damages, and to pay the costs in the common law suit. The grievance now complained of, and against which relief is sought in the present suit, is, that defendant has, many times since the other transaction occurred, threatened to re-open such ditch and wrongfully to divert large quantities of water from the ponds and sloughs on defendant's land out of its natural course, on and over lands of complainant, and this bill was brought to restrain the doing of these acts alleged to be wrongful, and to be an irreparable damage to complainant's land, and for the doing of which it is said no adequate remedy exists at law.

The answer of defendant is full and direct, and either admits or denies all material allegations of the bill. In regard to the most material charges in the bill, defendant denies that there is an elevation at the point where the ditch was filled up,

amounting to a dividing line between the waters that should flow east, towards complainant's land, and the waters that would naturally flow west from him. He also denies it was agreed by defendant, and decided by mutual friends chosen by the parties to this suit, that the ridge or elevation referred to in the bill, or any other ridge or elevation or place, was the dividing line between the waters that should flow towards complainant's land and those that should not flow towards him; and he also denies that he pledged himself that any ridge should always be the dividing line, and the surface should not at any time be changed so as to divert the waters across complainant's land, and avers the agreement complainant alleges and insists upon, would come within the Statute of "Frauds and Perjuries," and that he would not be bound by it. Defendant admits he always claimed the right to drain his land and direct the water in its natural and usual outlet, which, it is alleged, is over and across the land of complainant. Other matters are set forth in the answer, but in the view that will be taken of the case it will not be necessary to state them.

The usual replication was filed, and the cause referred to the master in chancery to take testimony, with directions to report the same, with his findings, which he did. On the coming in of the master's report, both parties filed exceptions, which will be noticed further on. In addition to the evidence reported by the master, other testimony was heard in open court, which has been preserved in the record. The court, by its decree, found generally that all the allegations of the bill, material to the relief sought, are true, and that complainant is entitled to equitable relief, and as to the pivotal fact in this case, on which the decision turns, the court found that on defendant's land there is a rise or divide, more or less marked, that runs north and south at about the distance of five hundred and ninety-six feet from the half section line between the lands of complainant and defendant, and that by the digging of the east and west ditch by defendant, the water that gath-

ered west of the divide was, to a considerable extent, diverted from its natural course, and that the natural outlet of all the water gathered upon the land of defendant west of such divide, is to the south and west, and not easterly. So far as other facts found by the decree may be thought to be material, they will be stated in the brief discussion that is to follow, otherwise no mention need be made of them.

It is obvious from this statement of the pleadings and the findings of the court, the questions involved are purely questions of fact, and as to which it must be conceded, in the outset, the evidence is quite conflicting. The law which counsel for defendant insists is applicable and should control, is so well understood it need not be discussed. It is, that the owner of a higher tract of land has the right to have the surface water falling or coming naturally upon his premises by rains or melting snow, pass off the same through the natural drains upon or over the lower or servient lands next adjoining, and the owner of the dominant heritage has, and ought to have, the right, by ditches and drains, to drain his own land into the natural and usual channels which nature has provided, even if the quantity of water in that way thrown upon the next adjoining lower lands be thereby increased. The rule in this respect is a just one, and is indispensable to secure proper drainage, in many instances necessary to render land tillable. While the owner of lower lands shall receive all water that naturally flows from the next higher lands, the owner of the higher lands may not open or remove natural barriers, and let onto such lower lands water that would not otherwise naturally flow in that direction. That would be to subject the servient heritage to an unreasonable burden, which the law will not permit, and against which the owner ought reasonably to have protection. The principles of law that govern in such cases are in harmony with good neighborship, and ought to be readily acquiesced in. But it is seen, the difficulty does not lie in ascertaining the law, but in ascertaining the facts to which

the law, as stated, would be applicable. In entering upon the consideration of the evidence, much difficulty is at once experienced, on account of the conflicting character of the testimony. So far as this court can know, the witnesses on either side are of equal respectability. The testimony found in the record is too voluminous to admit of any analysis of each particular witness' testimony. All that is practicable, without extending this opinion to a length that would be unreasonable, will be to state the conclusions reached, after subjecting the entire record to a close study. Anything more would be a useless and profitless work when done.

Undoubtedly, the land in the vicinity of the premises where the parties reside, is nearly or quite level. That fact appears clearly from the testimony of the surveyors, who state the levels taken by them. On the lands of defendant there are basins and sloughs, in which quite considerable bodies of water accumulate. Although these lands are quite level on the surface, still they are high lands as compared with other lands in the same vicinity. Waters flowing from these lands pass off through the slight depressions or sloughs that exist, and uniting, as they do, constitute the sources of little streams, that gradually reach the proportions of what are called "creeks," and which receive names by which they are commonly known. It is a matter of common observation, and needs no proof to establish the fact, that ponds situated on uplands, as they are frequently discovered to exist, are surrounded by what may properly be called a rim, with a slight depression at some point, over which the water escapes when more flows in from the higher lands than the basin will naturally contain. That is its natural outlet. So many witnesses testify in this case to the existence of a "divide," or "elevation of land," at a point about six hundred feet west of the line between the lands of complainant and defendant, it seems impossible to resist the conclusion, the decree finding that such "divide" or "elevation" does exist is warranted by the evidence. If that fact shall be

conceded to be well found, as must be done, then it is suffi-
ciently proved the natural outlet of most, if not all, the water
that may accumulate west of such "divide" would be south and
west, as the court found it to be, and not easterly.   The wit-
nesses that have known the premises longest, seem to speak
most confidently as to the existence of what they call the
"divide," and as to the natural outlet of the water that accu-
mulates west of it, on defendant's land.   They all say its
natural course is to the south or south-west, through natural
depressions or sloughs, until it reaches the channel of the
"Six-mile" creek, and thence to the Mackinaw.   East of what
is alleged to be the "divide," the witnesses say the waters that
fall upon defendant's land pass to the east or south-easterly,
through natural outlets, over complainant's land, and from
thence, perhaps, to Money creek.   There is no doubt but that
at seasons of the year when the water is unusually high in the
ponds or sloughs on defendant's land, caused by unusual rain
falls or sudden melting of large bodies of snow, and the wind
prevails from the south or south-west, the waters flow over
the alleged "divide" to the east, and escape in that direction.
That seems to be the exception, and not the general rule.
This fact may serve to explain, in some degree at least, what
appears to be contradictory testimony.   Witnesses that saw the
water at such seasons, could, with the utmost candor, say it
flows both ways from the point in controversy,—that is, when
the basins become unusually full there would be more than
one outlet.   That very fact seems to confirm complainant's
theory of the case.   How could the waters flow both ways at
the point in controversy,—that is, that which falls east of the
supposed "divide" would go to the east, and that which accu-
mulates to the west going to the south-west,—unless there was
some elevation of the land to cause the water to divide at that
point?   Philosophically, it is certain the waters would flow in
the same direction unless there was an elevation or obstruction
to cause the same to divide and go part in one direction and

part in another. While the test made by the neighbors who offered their friendly offices to settle the controversy is by no means conclusive, it is persuasive of the correctness of complainant's position. The suggestion was adopted, that the ditch dug by defendant through what complainant insists was the "divide," should be filled up even with the original surface, and they agreed the effect should be observed the next day. When they returned the next day, it was seen the water did not flow to the east, over the dam, but passed off to the south-west. There is evidence tending to show, when that fact was ascertained, defendant agreed to allow the ditch to remain closed, in consideration of which complainant agreed to dismiss the common law suit to recover damages, at his own costs. But be that as it may, the evidence, aside from the alleged agreement, is sufficient to support the decree of the circuit court,—at least this court can not say it is so much against the weight of the evidence, it ought, for that reason alone, to be reversed. The trial court had some advantages for ascertaining the facts, not possessed by this court, and, on the whole record considered, its decree should stand.

There can be no doubt that all the water that naturally falls on defendant's land east of the alleged "divide," would flow east or south-east over complainant's land, and defendant confidently insists the court erred in not decreeing that complainant's embankment on the line of hedge is unnecessarily high, and a serious damage to defendant, and that the same should be removed. That would be affirmative relief, which could only be granted on a cross-bill, and none was filed. It will be observed the question whether the embankment on which the hedge is planted is too high, or whether sufficient spaces were left open to permit the flow of water from defendant's land east of the dividing ridge that would naturally flow that way, is not made either by the original or any cross-bill, and is not, therefore, made a matter in issue between the parties, by their pleadings in the case. It was therefore un-

necessary, and indeed improper, for the court to find, as it did, that complainant cut holes through the embankment thrown up, upon which the hedge was planted, "for water ways for the escape of such water as might fall east of what is claimed as the dividing ridge, and which were sufficient for that purpose." As has been seen, that was not made an issue by the pleadings, and the court should have made no finding in regard to that question. To the end neither party may be embarrassed in any controversy that might hereafter arise in regard to the flow of water in that direction from defendant's land east of what is claimed as the dividing ridge, so much of the decree as finds the holes cut for water ways through the hedge embankment "were sufficient for that purpose," will be so modified in this court as to leave that an open question between the parties.

The court overruled the exceptions taken by defendant to the master's report, but it is claimed no disposition was made of the exceptions taken by complainant to the master's report, and that is said to be error. The technical error in that respect, if any exists, does not affect defendant in any way whatever, and he can not therefore assign it for error. But be that as it may, the fact the court decreed in favor of complainant on most, if not all, the points covered by his exceptions to the master's report, is in effect sustaining the exceptions, and the omission to make any formal order sustaining the same is not error for which the decree could be reversed.

With the modification of the decree as suggested, the judgment of the Appellate Court will be affirmed, at the costs of plaintiff in error.

*Judgment affirmed.*