[Argued October 25, 1892; decided November 14, 1892.]

# E. A. WHITNEY *v.* WILLAMETTE BRIDGE RY. CO.

### [ S. C. 31 Pac. Rep. 472.]

1. SURFACE WATER— ADJACENT OWNERS.— A land owner may turn or expel upon the land of an adjacent owner surface water that would naturally flow there, and in such quantities as would naturally drain there; but a land owner may not collect the surplus water upon his lands into a body and by ditches or other artificial means discharge it upon adjacent land whither it would not naturally flow.

2. WATERS— RIGHT TO CONVEY INTO NATURAL CHANNEL.— A street railway company may turn any accumulations of surface water which interfere with the operation of its line into the channel where it is accustomed to flow, without liability to adjoining land owners, where the amount of surface water passing into the channel is not increased.

Multnomah County: E. D. SHATTUCK, Judge.

Plaintiff appeals.    Affirmed.

*V. K. Strode* ( *Chas. N. Wait* and *B. M. Smith* on the brief), for Appellant. ·

*Rufus Mallory* (*Dolph & Simon* on the brief), for Respondent.

LORD, C. J.—This was an action brought by the plaintiff against the defendant to recover damages on account of the alleged washing out and destruction of a fill being made in a gulch by the plaintiff in the improvement of Abernethy Avenue in the city of Portland. The trial resulted in a verdict and judgment for the defendant, from which this appeal is taken.

The only errors complained of relate to instructions given by the court, and instructions asked and refused. Substantially, however, the instructions given cover the instructions asked and refused; and if those given do not misstate the law as applied to the facts, there was no error which should cause a reversal of the judgment. The facts upon which the instructions were based are contained in the bill of exceptions. This shows that the gulch referred to in plaintiff's complaint was not a water-

course; that in the improvement of Williams Avenue a fill had been made in and across said gulch where Williams Avenue crossed the same, and that at no time after said fill was made did water pass below it in said gulch, and that said fill was made sometime prior to the time that the fill being made on Abernethy Avenue was washed out; that the plaintiff at the time mentioned was engaged in the improvement of Abernethy Avenue, and had partially made a fill in certain lots lying in said gulch and where Abernethy Avenue crossed said gulch immediately below the Williams Avenue fill, and that there was a large basin thus formed between the fill at Williams Avenue and the fill being made by plaintiff at Abernethy Avenue; that Williams Avenue at the time complained of was not graded down to the grade established by this city, and that after making said fill in Williams Avenue the defendant in the construction of its street railway line laid its track down to the grade of said Williams Avenue, and in that way formed a cut or channel in or near the center and along Williams Avenue for a long distance north of said fill in said gulch.   There was also evidence tending to show that the defendant company dug a ditch some twenty inches wide and eight inches deep along the end of the ties of said railway track in said avenue to said fill; that said company caused a ditch to be made from its track to the street at a point near said fill and leading into said basin below said fill, and that quantities of surface water ran along said track in said street by means of said ditch last mentioned into the said basin below said fill at Williams Avenue, and that by reason thereof the fill being made by the plaintiff in Abernethy Avenue was washed out and the plaintiff damaged.

The defendant introduced evidence tending to show that the gulch in question was the channel through which the surface water was accustomed to flow, and that it served as a drain for a large tract of country on both sides of it; that the grade of Williams Avenue, as established by the city, was such as to carry across the gulch the

water coming from the north, but that at the ·time in question the fill on Williams Avenue had settled so much as to form a pool on Williams Avenue, and that the accumulation of waters in said fill endangered the whole embankment or fill on said avenue.   The defendant also introduced evidence tending to show that no more water was turned into said gulch by any acts of the defendant than was wont to accumulate and flow there before the defendant constructed its road and track.   ·

1.   The instructions excepted to were to this effect, as stated by the trial court:  "Now the land owner may, in leveling or grading his land, cause an accumulation or diversion of surface water, and may cause the water to flow down upon the land of an adjoining proprietor; and in such case there is no cause of action.   A land owner has the right to divert surface water that is coming upon his premises, and if he, in the ordinary course of the water's flow, causes the water to pass upon an adjoining proprietor, there is still no liability; but if the land owner collects surface water in ditches and artificial channels, and causes it in that manner to flow upon the land of an adjoining proprietor, and it does damage, he is responsible for damages thus caused.   *   *   *   In this case the defendant had a right to protect its works and maintain its railroad and carry on its business there in the streets; and if interfered with by an accumulation of surface water, it had a right to convey off from its road such surface water into the channel, or gulch, or place, whatever it might be, where such surface water was accustomed to flow; and if it carried no more water into such gulch than would naturally accumulate there if it had not operated a railroad, there would be no liability resulting from an accumulaation of water in the gulch.   *   *   *   The inquiry for you to make is, whether the defendant, in the care of its railroad and in the transaction of its lawful business affairs, caused to be conveyed into this gulch below Williams Avenue any more than the natural and ordinary amount of water that would have flowed or

accumulated there had not Williams Avenue been filled with dirt—in other words, had the ground remained in its natural condition above Abernethy Avenue."

These instructions are based on the idea that the defendant, being duly authorized by law to construct its road in the street, is not liable in damages for the expulsion of surface water if the amount collected by reason thereof is not greater than would have naturally accumulated there, and is carried off into the ravine or gulch into which it was accustomed to flow, or which was its natural outlet; that these are consequences that would naturally occur without any positive acts of the defendant, and of his liability to such an injury the plaintiff is supposed or bound to take notice. But the court is particular to charge the jury that the right to expel surface water upon an adjoining owner is not absolute and unconditional, but that if a land owner undertakes to collect surface water in increased quantities, and by means of ditches or artificial channels to precipitate it in a body upon the land of another, whereby an injury results thereto, he is responsible for the damages thus caused. It is admitted that the water which caused the damage is surface water, and that the defendant was authorized to lay its track at grade, and run its cars thereon. In doing this the company provided the means, as detailed, to carry off the surface water that naturally accumulated, and discharged it into the ravine into which it would naturally flow.

2. The counsel for the plaintiff seems to think that the instructions as applied to the facts assert the principle that the defendant may by means of drains or ditches collect the surface water from a wide area which did not naturally flow in that direction and pour it in a body upon the land of an adjoining proprietor without responsibility for the damage thus occasioned, but this is not so. As we understand it, the trial court recognized the principle that a land owner in improving his land may cause the surface water to flow upon an adjoining proprietor, and

that when the water comes upon the premises of such land owner, he has the right to divert and turn it upon the land of another without liability to an action in either case, but that in no case could a land owner collect the surplus water upon his lands into a body and discharge it through a ditch upon the lands of another, or upon lands which do not form the natural drainage of such waters.* These general principles were announced in order to throw upon the succeeding instruction, which bears more directly upon the case. And this was that it was the right of the defendant company in operating its road in the streets, if there was any interference with it by an accumulation of surface water, to convey it away from its road into the channel or gulch where such surplus water was accustomed to flow, and if the defendant turned no more of it into such gulch or channel than would have naturally flowed and accumulated there without the railroad, then there would be no liability resulting from the accumulation of surface water in such gulch or channel, and as a consequence no redress for the injury of which the plaintiff complained. Owing to the configuration of the country, this ravine or gulch occupies about the same relation to the surrounding country as a natural drainage for surface water as a stream into which surface water would naturally flow.

The grievance complained of is not made by adjacent property owners, nor is the surface water turned upon them, but the complaint is made by a party making a fill in a gulch or channel into which such water was accustomed to flow in like quantities. "By the common law," says Mr. Gould, "no rights can be claimed *jure naturæ* in the flow of surface water, and its detention, expulsion, and diversion is not an actionable injury": Gould on Waters, § 263. Under the common-law rule the lower land owner has a right to obstruct or dam back surface

* NOTE.—The rights of adjacent land owners as against surface waters is the subject of a note to the case of *Patoka Township* v. *Hopkins*, 31 Am. St. Rep. 417.—REPORTER.

waters flowing from higher lands. In dealing with these cases, arising out of obstructions placed by the lower proprietor to prevent the flow of surface water over his lands, the different courts of the country have come in hopeless conflict, some adopting the common-law rule while others follow the civil-law rule. Under the civil law, the lower of two adjacent estates owes a servitude to the upper proprietor to receive all natural drainage, and as a consequence, he has no lawful right to obstruct the natural flow of such surface water to the injury of the upper proprietor: Gould on Waters, §§ 263, 274; Cooley on Torts, 577, 580; Dillon Munic. Corp. §§ 1039, 1044. But it is not perceived how the present case can be affected by the difference in these rules. Both recognize the right of the land owner to expel surface water from his land, the common law treating it as a common enemy against which each owner might defend himself, while the civil law places the right to expel it upon the natural situation of the ground in respect to drainage. In either view upon the facts, the defendant would have had the right to carry the surface water into the gulch into which it was accustomed to drain, within the principle declared in the instructions. There was no error and the judgment must be affirmed.

---

[ Argued Oct. 27, 1892; decided Nov. 14, 1892; rehearing denied Mar. 2, 1893.]