Argued March 14, affirmed September 24, petition for
rehearing denied November 12, 1958

GARBARINO *v.* VAN CLEAVE ET AL

330 P. 2d 28

*W. C. Winslow,* Salem, argued the cause and filed
a brief for appellant.

*Asa L. Lewelling*, Salem, argued the cause and filed a brief for respondents.

Before PERRY, C.J., and ROSSMAN, MCALLISTER and SLOAN, Justices.

McALLISTER, J.

This suit was brought by Ann Garbarino as plaintiff to enjoin Alvin, Luella, Darrell and Audrey Van Cleave from using a drainage system constructed by said defendants to drain the surface water from their lands. Plaintiff complained that the system accelerated the flow of water onto her lands and damaged them. A decree was entered in favor of defendants, from which plaintiff appeals.

Plaintiff owns 43 acres of land in the Lake Labish district of Marion county, a few miles north of Salem. Much of plaintiff's tract is in the former bed of the reclaimed lake and is referred to as beaver-dam land. The soil consists principally of decayed wood and vegetable matter, is light and washes easily.

The defendants own a tract of upland in the shape of an L, the long side of which adjoins the east side of plaintiff's land. The base of the L lies south of plaintiff's tract but is separated from it by a rectangular strip known as the Steusloff property. During periods of heavy rainfall the surface water from defendants' land naturally flowed into what had been the bed of two arms or inlets of the former lake. The two points at which the water flowed into the former lake bed were near the east and south boundaries of plaintiff's property. This flow was by natural channels except at one point where the water ran for a way in a ditch alongside a public road.

In October 1953, the defendants installed a system to facilitate the drainage of surface water from their

land. The system consisted of lines of clay tiles laid three to five feet beneath the surface. The tiles were laid a quarter of an inch apart and water, after seeping through the soil, entered the lines through these joints. Only after a hard rain for a day or so did water run from the lines. Plaintiff contends that as a result of the installation and use of their drainage system by defendants, her land was flooded and eroded on two occasions during the winter of 1953-54.

■ The rule of the civil law regarding surface waters is now firmly established as the law of Oregon. In *Street v. Ringsmyer*, 108 Or 349, 353, 216 P 1017, the court said:

"There has been a great conflict of precedents in the United States about whether the common-law rule or that of the civil law respecting surface waters shall prevail. The question was not definitely settled in this state until the case of Rehfuss v. Weeks, 93 Or. 25 (182 Pac. 137), followed by Harbison v. Hillsboro, 103 Or. 257 (204 Pac. 613), in both of which the opinions were written by Mr. Justice BEAN."

In *Rehfuss v. Weeks*, 93 Or 25, 182 P 137, the rule as to surface water and the drainage thereof was stated as follows:

"The defendant as a land owner, had the right to turn or expel upon the land of an adjacent owner, surface water that would naturally flow there, and in such quantities as would naturally drain in such direction, without liability for damages: Whitney v. Willamette Ry. Co., 23 Or. 188 (31 Pac. 472); Davis v. Fry, 14 Okl. 340 (78 Pac. 180, 2 Ann Cas. 193, 69 L.R.A. 460); 5 M.A.L. § 469, p. 354. The owner of upper lands is not prohibited by the rule from cultivating his lands or draining them by artificial ditches, though surface water is thereby precipitated more rapidly upon the lands of the

adjacent owner below, provided he does not cause water to flow on such lands which, but for the artificial ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the interests of such adjacent owner: 30 Am. & Eng. Enc. of Law (2 ed.), 337; Angell on Watercourses (6 ed.), p. 122 et seq.; Anderson v. Henderson, 124 Ill. 164, 170 (16 NE 232); Wood v. Moulton, 146 Cal. 317 (80 Pac. 92); Shaw v. Ward, 131 Wis. 646, (111 N.W. 671, 11 Ann. Cas. 1139)."

In *Harbison et ux. v. City of Hillsboro*, 103 Or 257, 204 P 613, Mr. Justice BEAN discussed at some length the difference between the rule of the civil law and the common enemy rule, which the court called the common law rule. Regarding the right to accelerate the flow of surface water by artificial means, the opinion concluded as follows:

"* * * The rule that would best serve in this state, and tend to promote the interest of the people without causing undue hardship, would be to allow the owner of land to turn upon the land of an adjacent owner surface water in such quantities as would naturally drain in that direction by means of artificial drainage even though the flow of such water upon the lower tract is accelerated, due regard being observed for the interest of the adjacent owner so as to cause no unreasonable inconvenience: Whitney v. Willamette Bridge Ry. Co., 23 Or. 188, 192 (31 Pac. 472)."

See also *Levene et ux. v. City of Salem*, 191 Or 182, 229 P2d 255 and *Wellman et ux. v. Kelley and Harrison*, 197 Or 553, 252 P2d 816.

■ Under the foregoing rule the defendants had the right to install and use a system to drain the surface water from their lands into natural channels even though they thereby accelerated the flow of water onto

the lower lands of plaintiff. The plaintiff does not allege and there is no evidence to prove that defendants' drainage system caused water to flow onto plaintiff's land that otherwise would have flowed in a different direction. Plaintiff does not allege that defendants changed the place where the surface water from their property naturally flowed onto plaintiff's lands. The complaint does allege that defendants collected and accumulated large quantities of surface water and greatly accelerated the flow thereof. The words "collected" and "accumulated" were not meant to charge that defendants impounded any water by a dam or in a reservoir and thereafter discharged such water onto plaintiff's land. There was no evidence of any such impoundage. On the contrary, defendants' drainage system was designed to and did hasten the flow of surface water in the same drainways and channels along which it had flowed onto plaintiff's lands prior to the construction of the drainage system.

Plaintiff concedes that Oregon has adopted the civil law rule as to surface water and that defendants have a right to drain their lands and in so doing to accelerate the flow of surface water onto plaintiff's land. Plaintiff contends, however, that defendants may exercise this right only if they can do so without "substantially" or "materially" damaging the lower lands. This would imply that defendants can cause damage by accelerating the flow of water provided the damage does not reach substantial proportions. We have been cited to no case in which the law regarding surface water has been so defined. The opinions of this court do not measure the right or privilege by the extent of the damage.

It should be noted that the civil law rule as adopted originally by the courts of this country did not permit

any alteration in the natural flow of surface water. Any right or privilege to alter the natural flow of such water by artificial means has been granted by modification or qualification of the civil law rule and the qualifying rules are not uniform. It is not true, as said in *Levene et ux. v. City of Salem*, supra, that most of the courts of this country have adopted the rule of the civil law governing surface waters. It is clear, however, that by the great weight of authority in those jurisdictions which have adopted the civil law rule, the owner of the upper land may accelerate the flow of surface water by such drainage system as may be required by good husbandry, without liability for damages to the owner of the lower lands if the water is not diverted from its natural channels. III Farnham, Waters and Water Rights, § 893, p 2620 and 24 Minn LR 891 and cases cited in notes 146 to 160. Our prior decisions appear to be in accord with this weight of authority. See *Anderson v. Henderson*, 124 Ill 164, 170, 16 NE 232 cited in the Rehfuss case, and the following from Smurr on Farm Drainage § 3, p 2, which was quoted with approval in the Harbison case:

"* * * That is the owner of the higher tract of land has the right to have the surface-water flowing or coming naturally upon his premises by rains or melting snows pass off the same through the natural channels upon or over the lower or servient estate, and the owner of the dominant heritage may make such drains and ditches for agricultural purposes on his own lands as may be required by good husbandry, although by so doing the flow of water may be increased in the natural channels which carry the water from the upper to the lower fields; *and no one has the right to complain that the volume of water in its natural channels is increased by the artificial drainage of lands which naturally drain therein.*" (Italics supplied).

Plaintiff relies on *Levene et ux. v. City of Salem*, supra. In that case the city, by constructing ditches and laying tile, had discharged large quantities of water into a natural watercourse immediately above a point where the stream had in effect been dammed by the construction of the Pacific highway. Lines of tile had been laid under the highway through which the watercourse flowed without difficulty even during the rainy seasons. These lines were not large enough, however, to accommodate the additional water concentrated by the city and discharged into the stream immediately above the highway fill. Some of this additional water had not theretofore flowed in this watercourse. As a result of the city's action, water collected above the highway during heavy rainstorms, the stream overflowed its banks and flooded the basement of plaintiff's building.

We find nothing in the Levene case helpful to plaintiff. As pointed out above, that case involved the discharge of a concentration of surface water into a natural watercourse. Although watercourses are natural drains, they are governed by the rules relating to watercourses and not by those relating to the drainage of surface water from private lands. Some of the rules governing drainage are the same as those governing watercourses and some are different. Uncertainty has sometimes resulted from treating the drainage of surface water in the same class as watercourses. See III Farnham on Waters and Watercourses 2697, § 925: 2 Thompson on Real Property (perm ed) § 649 p 286.

As pointed out in the Levene case, it involved the "casting of an increased volume of water into the watercourse crossing plaintiffs' premises, without there being an adequate outlet therefor." There is no similarity between the conduct of the city in the Levene

case and the conduct of the defendants in the case at bar. There is no charge that these defendants diverted water from its natural channels, concentrated the flow thereof and discharged it onto plaintiff's lands at a place where otherwise it would not have flowed.

Plaintiff also relies in a large part on language contained in the opinion in the Rehfuss case stating that a landowner may by draining his land accelerate the flow of surface water "provided he acts with a prudent regard for the interests of such adjacent owner." In the Harbison case, Mr. Justice BEAN amplified the phrase to read as follows: "due regard being observed for the interest of the adjacent owner so as to cause no unreasonable inconvenience." The same proviso was again restated in slightly different language in the Levene case. None of the opinions give a clue as to the exact meaning of this language or the extent of the limitation, if any, imposed thereby on the right of the upland owner to accelerate the natural flow of surface water.

The "prudent regard" expressions would seem to be more consonant with the reasonable use rule regarding surface waters adopted by the Restatement (Torts, § 833 p 269) than with either the common enemy rule or the rule of the civil law. The expression as used in our decisions may be an admonition in general terms against damaging the lower owner by changing the place at which surface waters are discharged onto his land or by concentrating into one place the flow of water that would naturally flow onto the lower land in a more diffused form. Whether they intended to mean that or something more or less, we need not decide in this case. There may be circumstances under which the extraordinary acceleration of the flow of surface water in its natural channels may be enjoined.

Since there is no evidence of any such extraordinary circumstances in this case, we need not consider that question at this time.

■ The decree entered in the trial court contained a general finding for the defendants and dismissed the suit. The lower court apparently concluded, and we think properly, that plaintiff failed to establish by a preponderance of the evidence that the erosion of her land was caused by an acceleration in the flow of surface water and not from severe winter storms. It would serve no purpose to extend this opinion by a detailed consideration of the evidence. It was clearly established that there were extended periods of unusually heavy precipitation during the winter. The complaint itself alleges that the erosion of plaintiff's lands was caused "during times of heavy storm during the winter of 1953-54." It appeared from the evidence that during January the rainfall was 9.9 inches as compared to the norm for that month of 5.72 inches. 2.04 inches fell during one 24 hour period late in January. It also appears that erosion of the former lake bed is not unusual during winters of heavy rainfall. This evidence illustrates the nature of the factual problem presented by the case. Even viewed in a light most favorable to plaintiff, the evidence leaves considerable doubt that the defendants by the installation or use of their drainage system contributed in any material degree to the flooding and erosion of plaintiff's lands.

Affirmed.