Argued and submitted June 12, 2013, in A146490, affirmed, in A146505, dismissed April 30, petition for review denied October 2, 2014 (356 Or 397)

Alan BAZZAZ
and Fatma Bazzaz,
*Plaintiffs-Appellants,*

*v.*

William J. HOWE, III,
*Defendant-Respondent.*

William J. HOWE, III,
*Third-Party Plaintiff-Appellant,*

*v.*

THE PICULELL GROUP, INC.,
an Oregon corporation;
Marylhurst Place Homeowners Association,
an Oregon association;
City of Lake Oswego and Cypress Properties, Ltd.,
an Oregon corporation,
*Third-Party Defendants,*

*and*

Alan BAZZAZ
and Fatma Bazzaz,
*Respondents.*

Hamed MERLOHI,
*Intervenor-Plaintiff,*

*v.*

William J. HOWE, III,
*Defendant.*

Clackamas County Circuit Court CV09080800;
A146490 (Control), A146505

325 P3d 775

James T. McDermott argued the cause for appellants-respondents Alan Bazzaz and Fatma Bazzaz. With him on the briefs were Ciaran P. A. Connelly and Ball Janik LLP.

John L. Langslet argued the cause for respondent-appellant William J. Howe, III. With him on the briefs was Martin Bischoff Templeton Langslet & Hoffman LLP.

Before Nakamoto, Presiding Judge, and Egan, Judge, and Schuman, Senior Judge.

NAKAMOTO, P. J.

## NAKAMOTO, P. J.

Plaintiffs brought claims for negligence, trespass, timber trespass, ultrahazardous activity, and private nuisance against defendant, their neighbor, alleging that actions defendant took on his property triggered landslides that destroyed plaintiffs' home. Plaintiffs appeal from a jury verdict and general judgment in favor of defendant. On appeal, plaintiffs pursue two assignments of error with regard to their negligence claim: the trial court erred by (1) admitting evidence that the builder of plaintiffs' home was negligent and failed to build the house to standards required by building codes and (2) giving a jury instruction on the natural flow of surface water. We conclude that the trial court did not reversibly err, and we affirm. Given our disposition, we need not, and do not, address plaintiffs' third assignment of error regarding their attempt to seek punitive damages and defendant's four cross-assignments of error.[1]

## BACKGROUND

Plaintiffs owned a home located east of and across a road downslope from defendant's house and property. The east side of defendant's property is steeply sloped and abuts a road, Greenbluff Drive. Across Greenbluff Drive from defendant's property is another steeply sloped section of property owned by the Marylhurst Place Homeowner's Association (HOA). The HOA's property abutted the backyard of plaintiffs' house, which was cut into the hill and had retaining walls.

In January 2009, during a storm, two landslides occurred affecting the parties' properties. One landslide originated on defendant's property, blocking Greenbluff Drive and a storm-water ditch that ran along the road. The second landslide originated on the HOA's property and damaged plaintiffs' house beyond repair.

---

[1] This opinion reaches only the issues presented by plaintiffs' appeal in A146490. In the consolidated appeal, A146505, defendant challenged the trial court's grant of summary judgment to Cypress Properties, Ltd. After consolidation of the appeals and during briefing, defendant moved to voluntarily dismiss his appeal as to Cypress only, which we granted. Because, after Cypress's dismissal, there are no remaining issues for us to resolve in A146505, we dismiss it as moot.

The parties had competing theories and expert opinions on which landslide occurred first and the cause of each landslide. Generally, plaintiffs' theory was that, despite knowledge that his property was prone to slides, defendant removed trees and vegetation from his property and directed storm water to the sloped area of his property, causing the landslide that blocked Greenbluff Drive, which, in turn, forced storm water over Greenbluff Drive and onto the HOA's property, triggering the second landslide that destroyed plaintiffs' home.

Defendant countered with his own theories concerning why he had not acted improperly and had not caused plaintiffs' damages. The defense theories included that (1) the landslides occurred solely due to an extreme, unprecedented storm event, (2) the landslide on the HOA property occurred first, (3) the City of Lake Oswego failed to maintain and clear a storm-drain culvert that, if clear, would have directed the storm water safely away from the landslide blockage on Greenbluff Drive, (4) the builder of plaintiffs' home—Cypress Properties, Ltd. (Cypress)—did not build plaintiffs' house in accordance with building codes for slope setback and retaining walls, and if it had, plaintiffs' home would not have been damaged, (5) plaintiffs knew that they should have had the slope and retaining walls inspected by a geotechnical engineer before they bought the home, but chose not to, and (6) defendant's actions on his property were not negligent and could not have caused the landslide because the tree and vegetation removal occurred in a different area and the storm water had been directed to the same area since 1956 and caused only a negligible increase in water flow.

Based on those theories, among others, defendant brought a third-party complaint for indemnity and contribution against The Piculell Group, Inc., the developer of plaintiffs' neighborhood; Cypress; the HOA; and the City of Lake Oswego. All of the third-party defendants were dismissed before trial, either through summary judgment or by voluntary dismissal. With respect to the dismissal of Cypress, the trial court concluded that "there is no common duty mutually owed by [defendant] and Cypress to support [defendant]'s claim for indemnity and contribution. Furthermore,

[defendant]'s obligations to plaintiff[s] were both active and primary."

Plaintiffs' claims went to trial, and the jury returned a verdict for defendant. On appeal, plaintiffs bring two assignments of error, which are related only to their negligence claim. First, plaintiffs assert that the trial court erred in admitting defendant's evidence of Cypress's conduct in building plaintiffs' home. Second, plaintiffs assert that the trial court erred in giving a jury instruction on the natural-flow-of-water rule because the rule had no application to the facts of this case. The procedural facts related to each of those assignments are discussed in turn below.

## EVIDENCE OF CYPRESS'S CONDUCT

Based on the dismissals of defendant's claims against the third-party defendants before trial, plaintiffs brought motions *in limine* to exclude any evidence of the conduct of those third parties, arguing that they had been determined not to be at fault for plaintiffs' injury, and that any probative value of the evidence was outweighed by unfair prejudice and would mislead the jury. The trial court denied those motions, explaining that the evidence "would likely be relevant and essential to defenses based on causation, which require a finding of fact that could not have been made by a judge on Summary Judgment." Accordingly, the trial court concluded that "[d]efendant may offer evidence that a third party has sole and exclusive fault, and may do so in the alternative with evidence that regards more than one third party who may be found to have sole and exclusive fault."

At trial, defendant put on evidence that the third parties were at fault for plaintiffs' injury. As relevant to plaintiffs' appeal, defendant presented evidence that Cypress had built plaintiffs' house in violation of building codes for slope setback and retaining walls and that, if Cypress had met the code requirements, then plaintiffs' house would not have been damaged. Based on that evidence, defendant argued to the jury that plaintiffs' house was "an accident waiting to happen, and it happened."

On appeal, plaintiffs again argue that defendant's evidence about Cypress's conduct was irrelevant and

unfairly prejudicial. Because the court had determined, in dismissing defendant's claims against Cypress on summary judgment, that "[defendant]'s obligations to plaintiff[s] were both active and primary," plaintiffs reason that Cypress's conduct could not have been the sole and exclusive cause of plaintiffs' injuries. In addition, plaintiffs argue that Cypress's conduct could not have affected whether defendant's negligence was a substantial factor in bringing about plaintiffs' injury. Because one of those two findings would be necessary to excuse defendant from liability based on evidence of Cypress's fault, plaintiffs argue that the evidence was irrelevant and misleading to the jury. Defendant disputes plaintiffs' assertions and also argues that we cannot reach the merits of plaintiffs' assignment because, even if the trial court erred, it was harmless error.

The legislature has directed, "No judgment shall be reversed or modified except for error substantially affecting the rights of a party." ORS 19.415(2). Thus, we will reverse a trial court's decision only if the purported error substantially affected the aggrieved party's rights. "[E]videntiary errors substantially affect a party's rights and require reversal when the error has some likelihood of affecting the jury's verdict." *Dew v. Bay Area Health District*, 248 Or App 244, 258, 278 P3d 20 (2012). Based on the jury instructions, the verdict form, and defendant's presentation to the jury, we conclude that any error was harmless.

As part of the jury instructions on plaintiffs' negligence claim, the trial court explained that plaintiffs had to prove a negligent act or omission by defendant and defendant's causation of damages:

> "To prevail on their claim for negligence, the [plaintiffs] must prove it is more likely than not that these two elements are true:
>
> "(1)   [Defendant] was negligent in at least one of the following ways:
>
> "a)   Directing his storm water runoff to discharge from the slope on his property directly above the [plaintiffs'] property, and failing to redirect that storm water runoff after the December 2007 landslide;

"b) Girdling trees with intent to kill them in 2003, and continuing thereafter to clear, remove, top, and prune trees and other vegetation on his property, especially in the area directly above the [plaintiffs'] property;

"c) Failing to stabilize his slope after the December 2007 landslide;

"d) Directing the removal of additional trees and vegetation from his property in September 2008;

"e) Disregarding the unstable soil conditions, the recommendations of the City of Lake Oswego's geotechnical firm, and the property rights of downhill property owners like the [plaintiffs]; and/or

"f) Taking no action to eliminate or minimize damage to his neighbors that could be caused by the movement of water, soil, or debris from his property.

"(2) [Defendant]'s negligence caused damages to the [plaintiffs]."

Additionally, the court gave several instructions to the jury on the element of causation. One of those concerned the limited circumstance in which a nonparty's conduct could relieve defendant of liability:

"If you find the negligence of [defendant] combined with the conduct of nonparties to cause injury to the [plaintiffs], then [defendant] would be liable for the entire injury, regardless of the relative degree to which it contributed to it. However, if you find the conduct of a single nonparty was the only and exclusive cause of an injury to the plaintiffs, [defendant] is not liable for the injury.

"The term *nonparty* means a person or entity other than [defendant] or [plaintiffs]."

(Emphasis in original.)

The trial court gave the jury a special verdict form that tracked the jury instruction on negligence liability by separately asking whether defendant was negligent and then whether there was causation. The jury answered no to the question, "Was [defendant] negligent in at least one of the ways the [plaintiffs] claim?" Because the jury answered no to that question, as instructed, the jury left unanswered

the next question: "Did [defendant]'s negligence cause damages to the [plaintiffs]?" Thus, the verdict form demonstrates that the jury did not reach the issue of causation on plaintiffs' negligence claim and that its verdict was simply that defendant was not negligent in any of the ways alleged by plaintiffs.

The proper focus of our harmless-error analysis, therefore, is on whether any trial court error in allowing defendant to present evidence and argument that Cypress's conduct caused plaintiffs' injury had some likelihood of affecting the jury's verdict that defendant was not negligent in any of the ways alleged by plaintiffs. We conclude that plaintiffs cannot establish that required prejudicial effect.

The ways in which defendant was allegedly negligent involved his actions or omissions on his own property—that is, directing storm water, removing vegetation, and failing to stabilize his slope. The court instructed the jury that Cypress's conduct in building plaintiffs' house was relevant only to the jury's consideration of causation of damages, and, more specifically, the jury's consideration of whether Cypress's conduct was such that it could relieve defendant of liability (that is, was it the "sole and exclusive" cause of plaintiffs' injury). Defendant made no argument to the jury that Cypress's conduct excused his own conduct; rather, as noted earlier, defendant's theory in regard to Cypress was that the landslide from the HOA property severely damaged plaintiffs' house because their house was not built in accordance with building codes. We generally presume that a jury follows the jury instructions when rendering its verdict. *See State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990) (stating that jurors are presumed to follow instructions "absent an overwhelming probability that they would be unable to do so"); *Tenbusch v. Linn County*, 172 Or App 172, 178, 18 P3d 419, *rev den*, 332 Or 305 (2001) ("It is presumed that juries follow instructions, not disregard them."); Thus, we presume that the jury did not consider the evidence of Cypress's conduct, which pertained to causation, in rendering its verdict for defendant on his alleged breach of the duty of care. Because the admitted evidence did not have "some likelihood of affecting the jury's verdict," we affirm.

## JURY INSTRUCTION ON THE "NATURAL FLOW" RULE

In their second assignment of error, plaintiffs assert that the trial court erred by giving the following jury instruction on the right of one landowner to drain surface water onto the land of another:

> "Under the law, the landowner at a relatively higher elevation has the right to allow diffused naturally occurring surface water to pass through natural channels of drainage onto a lower tract of land.

> "Generally, a landowner may only drain onto adjacent land the same amount of surface water that would naturally flow there. The landowner may reasonably accelerate the flow by artificial means, but must give prudent regard to avoid unreasonable inconvenience to the lower landowner.

> "Surface water flows 'naturally' when there is no human change of the flow's direction."

The parties refer to the legal concept in the instruction as the "natural flow" rule.

Plaintiffs do not dispute that the instruction correctly sets out the natural-flow rule, as described in *Garbarino v. Van Cleave et al*, 214 Or 554, 556-57, 330 P2d 28 (1958). Rather, plaintiffs assert that the trial court erred when it gave that instruction, because the legal concept had no application to the facts of the case and, as a result, was likely to have misled the jury by suggesting that defendant was "legally immune" for directing storm water to the steep slope on his property. *See Walsh v. Spalding & Son, Inc.*, 216 Or App 55, 67, 171 P3d 1032 (2007), *rev den*, 344 Or 391 (2008) ("An instruction can be error even if it correctly describes the law if the instruction distracts the jury from the appropriate line of analysis." (Internal quotation marks omitted.)). Specifically, plaintiffs argue that the rule has no application because (1) they alleged that defendant was negligent in directing storm water onto his own property, not onto the property of others, (2) plaintiffs and defendant are not adjacent landowners, and (3) they did not allege that the storm water on defendant's property was flowing where it would "naturally."

Plaintiffs' first and third contentions concern whether their negligence claim implicated the natural-flow rule. We reject those contentions because the negligence claim concerned, in part, whether defendant had acted negligently with regard to the surface water flowing downhill from his property, and the jury was asked to determine whether defendant acted negligently by

> "[d]irecting his storm water runoff to discharge from the slope on his property directly above [plaintiffs'] property, and failing to redirect that storm water runoff after the December 2007 landslide;

> "*** and/or

> "[t]aking no action to eliminate or minimize damage to his neighbors that could be caused by the movement of water, soil, or debris from his property."

Both of those specifications of negligence are directed at defendant discharging storm water from his property and onto the property of another so as to cause damage to plaintiffs: "discharge *from the slope* on his property" and "the movement of water *** *from his property*." Thus, plaintiffs directly put at issue whether defendant could be held liable for damage to downslope property caused by defendant draining surface water from his property.

The natural-flow rule—and the jury instruction describing it—concerns the circumstances under which a landowner like defendant cannot be held liable for damages caused by draining surface water from his or her land. Defendant presented evidence that supported the trial court's giving of the instruction, namely, that he allowed the water on his property to drain following the natural flow and that he did not redirect or unreasonably accelerate the drainage. Given the specifications of negligence at issue and the evidence, defendant was entitled to a jury instruction that supported his defense. *See Chan v. Fred Meyer*, 71 Or App 20, 23, 691 P2d 150 (1984) (holding that a party is entitled to instructions on its theory of the case, if the evidence supported giving the instruction).

Plaintiffs' second contention is that the natural-flow rule was inapplicable because their property did not adjoin

defendant's property. Plaintiffs do not provide us with any explanation of the asserted significance of that fact or any authority that the natural-flow rule cannot apply to the circumstances of this case, in which defendant allegedly negligently directed surface water from his property that contributed to or triggered the mudslide that destroyed plaintiffs' house downhill and across the street. Although it appears that plaintiffs' argument lacks support, *see Rehfuss v. Weeks*, 93 Or 25, 26, 32, 182 P 137 (1919) (adopting and applying the natural-flow rule where the plaintiff's and the defendant's land were not directly adjoining), because plaintiffs' argument is undeveloped, we decline to address it. *See Cunningham v. Thompson*, 188 Or App 289, 297 n 2, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) ("Ordinarily, the appellate courts of this state will decline to address an undeveloped argument."). Accordingly, we conclude that the trial court did not err in giving an instruction on the natural-flow rule.

In A146490, affirmed. In A146505, dismissed.