No. 864		October 1, 2025		735

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of B. J. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

B. J. R.,
*Respondent,*

*v.*

J. M. R.,
*Appellant.*

Lane County Circuit Court
21JU05936; A186832

Valeri L. Love, Judge.

Submitted July 28, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Gabe Newland, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant. Also on the reply brief was Elena C. Stross.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for respondent B. J. R.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Mother brings this appeal from a judgment changing the permanency plan for her child, B, from reunification to guardianship pursuant to ORS 419B.476(2)(a). Mother raises two related assignments of error: (1) the trial court erred in finding mother had not made sufficient progress towards ameliorating the bases for dependency jurisdiction; and, subsequently, (2) the trial court erred in changing the permanency plan from reunification to guardianship. As we explain below, because we conclude that the evidence supported finding that mother had not made sufficient progress toward ameliorating the basis of jurisdiction for dependency, we affirm.

The trial court asserted jurisdiction over B in January 2022, on the basis that mother's mental health and substance abuse issues were "untreated."[1] At the time of B's removal, mother had attempted suicide multiple times, and in an incident where the family home caught fire, mother refused to leave, and B had to be removed by her older sibling.

In the following two years, mother engaged in mental health services, parenting classes, and other services recommended to her by ODHS, but concerns still lingered about her mental health, as she exhibited paranoia and made risky decisions. In April 2024, mother was evaluated, and the examining doctor had a positive prognosis for mother's ability to move towards safely parenting B. However, shortly after that evaluation was issued, in May of 2024, mother was involved in a violent incident, where she attacked a motorcyclist with a bat. After she was arrested, she became escalated in the patrol car to the point of shaking the vehicle. She was indicted for third-degree assault, unlawful use of a weapon and criminal mischief, and spent about a week in custody.

Following that incident, the doctor who examined mother in April reassessed mother and retracted the April recommendation. Over the next several months, mother had fewer mental-health related incidents, but her treatment

---

[1] The trial court dismissed the substance abuse basis in January 2024.

plan was not progressing. Specifically, mother reported strange incidents with drug users, missed a video visit with B the day B had surgery, and would not provide ODHS with a new address. In October 2024, her doctors recommended different medications for her mental health treatment, but she refused, citing conspiratorial theories about the proposed medications. In December 2024, a doctor submitted a psychological evaluation of B which concluded:

> "[B] is a five-year-old girl who has suffered severe trauma and neglect at the hands of her birthmother, and over the last two and half years in the care of her resource mother, she is thriving. She exhibits bonding and attachment with her resource mother and has successfully completed therapy meeting all of her treatment goals.
>
> "* * * * *
>
> "It is highly recommended that [B] remains with her resource parent, and if adoption is in the plan, this should be pursued, or certainly permanent guardianship.
>
> "* * * * *
>
> "Some circumstances that would reflect that [mother] is stable and showing consistenc[y] and competent abilities would include an updated psychological evaluation and parenting capacity evaluation, active involvement in ongoing treatment with positive reports for one year, evidence that she has remained on her medication for one year (if this is prescribed by a medical professional), and no new contacts with criminal justice for one year."

The trial court held a permanency hearing in January 2025, where DHS requested the permanency plan change to guardianship with B's resource parent. After the hearing, the court issued a written order. In the order, the court found that mother's progress had seemed to be positive until the May 2024 incident where she was arrested. The court noted that mother's evaluating doctor retracted his prior recommendation that she move towards reunification, and instead recommended delaying reunification until she can be seen by medical providers who would have time to re-evaluate her. The court then concluded that mother had not made sufficient progress because:

"This child has been in substitute care for over 3 years. This is over half of her life. Mother has engaged in services but not made sufficient progress. This is best evidenced by her years (in this case) of unwillingness and/or inability to recognize her own circumstances, fully appreciate her mental health issues, fully collaborate with professionals and service providers, and how her mental health and lack of full cooperation with professionals and service providers present a safety risk to her child. Again, despite her engagement, she decompensated very quickly (at a time when she was reportedly engaged in services) resulting in a criminal assault on another individual. The circumstances and conditions that caused the child to come into care and that form the basis of jurisdiction as to mother have not been ameliorated. The Court finds that the child cannot be safely returned to mother's care in a reasonable time."

We review a court's finding that a parent's progress was not sufficient for legal error. *See Dept. of Human Services v. Y.B.*, 372 Or 133, 151, 546 P3d 255 (2024). We review the evidence in the record in the light most favorable to the trial court's disposition and only consider "whether, when so viewed, the record was legally sufficient to permit that outcome." *Id.* at 150-51.

Mother essentially raises two arguments about the court's findings: first, that the trial court overvalued the incident in May and that it thus did not conform to our jurisprudence that requires a trial court to focus on the months leading up to a permanency hearing when evaluating a parent's progress. *See id.* at 145 (framing the question as "whether the child's safe return home is possible *at the time of the hearing*" (emphasis added)). Second, mother argues that the basis of jurisdiction was that her mental health was "left *untreated*," and, since mother was engaged in treatment, the court could not find that she had not made sufficient progress towards that basis. *See Dept. of Human Services v T.L.H.S.*, 292 Or App 708, 719-20, 325 P3d 775 (2018) (reversing when a parent had engaged in treatment and the basis was that their mental health was untreated). We will discuss the argument about the scope of the basis of jurisdiction first.

Mother argues that, because she was engaging in some treatment, she had ameliorated the basis of jurisdiction. Mother correctly notes that in *T.L.H.S.*, we reversed a trial court when a parent had engaged in mental health treatment, and one of the bases was that mother's mental health, if left untreated, put the child in harm's way. 292 Or app at 720. But we disagree that the circumstances here warrant the same outcome. In *T.L.H.S.*, about six months prior to a permanency hearing, the mother admitted she had failed to protect her child by not reporting abuse by another person earlier, and continued to let the perpetrator live in the house for weeks thereafter. *Id.* at 717. In the months that followed, the mother *successfully* engaged in treatment and parenting classes, and she had been working for weeks with a mental health counselor, a therapist with whom she had a "good relationship," and was taking medications that were prescribed to her for mental health. *Id.* Here, by contrast, mother's starting point concerning her mental health was that she was suicidal to the point of allowing B to be put in harm's way. While she appeared to make progress, considering the incident in May 2024, followed by her refusal to engage with doctors regarding medication, and the recommendations of the doctor to the trial court prior to the hearing that the court delay reunification pending further time and evaluations, we cannot say that mother's mental health was, in fact, being treated in the way mother would have us conclude. Rather, we conclude the evidence was sufficient to find that mother's mental health was *not* being treated effectively, that is, in such a way as to ameliorate the basis of jurisdiction, because the court had evidence allowing a finding that whatever treatment mother had engaged in up to that point was not addressing the underlying mental health issues that caused her to decompensate so drastically in May 2024.

Regarding the argument that court placed too much emphasis on the May 2024 incident, we agree with the trial court's conclusion that mother's progress seemed to be positive up until that point, but that is in the context of mother's mental health issues manifesting with suicide attempts and an incident where her mental health, during a fire, interfered with her ability to safely parent her children

and help them be removed from danger. Whatever progress had been made up until the May 2024 incident was not considered effective by her treating doctors in light of her subsequent decompensation and arrest. Following that arrest, her evaluating doctor said that, in order to safely conclude that B could begin a process of returning to mother's care, there had to be a significant period of time without such incidents and a demonstration of engagement with mental health treatment. Two months before the hearing, doctors had expressed concern that mother was not willing to engage with medications that may help her progress further. The psychological evaluation of B, which recommended delaying the return of B to mother, was provided to the trial court less than one month prior to the permanency hearing. The trial court noted that mother had previously been unwilling to recognize her mental health issues and that she had decompensated in May so quickly that the court could not trust mother had made progress without seeing more from her over a period of time. Under those circumstances, with mother once again downplaying treatment with her providers and demonstrating strange thoughts and decisions within the months leading up to the hearing, we conclude the evidence was sufficient for the trial court to find ODHS had met its burden to establish that mother had not made sufficient progress towards ameliorating the basis of jurisdiction.

Affirmed.